Clifford L. Wall and Virginia M. Wall, f/u/o Travelers Insurance Company, Plaintiffs-Appellees, v. Airport Parking Company of Chicago, Defendant-Appellant.

Gen. Nos. M–51,603, 51,536. (Consolidated.)

First District, Second Division.

September 15, 1967.

Weaver & Piety, of Chicago (Philip A. Piety, of counsel), for appellant.

Epton, McCarthy, Bohling & Druth, of Chicago (Bernard E. Epton, Edward A. McCarthy, and David S. Kreisman, of counsel), for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

Travelers Insurance Company, as subrogee, brought this action to recover in an amount paid by it to its insured for damages to an automobile stolen from a parking lot at the O'Hare Airport. Defendant's motion for judgment on the pleadings was denied and the case proceeded to trial on an agreed statement of facts. Judgment in the amount of $1,846.55 was entered for the plaintiffs and the defendant appeals.

Defendant maintains that the record, as a matter of law, fails to establish a bailor-bailee relationship between the operator of the automobile and the defendant, and that the record is devoid of any evidence of negligence on defendant's part.

The agreed statement of facts discloses that defendant operates a parking lot at O'Hare Airport under a contract from the City of Chicago. The lot has a capacity for approximately 2,500 automobiles and the surface is paved and marked for parking spaces. The lot is enclosed by a fence, has designated entrances and exits, and is lighted at night. A motor vehicle operator gains admission to the lot through one of the designated entrances where a machine dispenses a dated and time-stamped ticket to the operator. The reverse side of the ticket

bears the following legend: "This is a lease of parking space only and not a bailment." After receiving the ticket the vehicle operator drives his automobile to a parking space of his own choosing, parks the automobile, locking it or not as he sees fit, and retains the key. Upon return to the lot to reclaim his automobile, the automobile operator goes directly to the automobile and drives it to one of the designated exits where he presents the ticket to an attendant who computes the parking charges therefrom. This is the only instance in the entire parking procedure where the automobile operator has any contact with the defendant's agents.

On December 19, 1962, Richard Wall, plaintiffs' agent, drove the automobile in question into defendant's parking lot, following the procedure above described. The following day when he returned to the lot to reclaim the automobile he was unable to locate it. The record shows that at no time did defendant's agents move the automobile; they did not have the key to the automobile nor did they know where the automobile was parked in the lot. A report was made to the police after it was concluded that the automobile had been stolen; it was subsequently located where it had been abandoned in a damaged condition by the thieves.

The question presented by the factual situation in this case, namely, whether the relationship between defendant as an operator of a commercial self-parking lot and an automobile operator who uses the lot is that of a bailor-bailee or whether it is some other relationship, is one of first impression in this jurisdiction. (In the case of Standard, Inc. v. Kirby, 319 Ill App 206, 48 NE2d 716, defendant on appeal challenged the trial court's finding of his status as a bailee under the facts of the case, but the Appellate Court held that the defendant's answer to the complaint admitted his status as a bailee and disposed of his contention in this manner.)

The "parking lot cases," as they are commonly known, fall generally into three categories: (1) where an attendant simply collects a parking fee and designates a place to park, and the automobile operator retains control of the automobile, locking it or not as he wishes; (2) where an attendant collects a parking fee, assumes control of the automobile and parks it, moves it when the key is left at the request of the attendant and a ticket is issued to the automobile operator as a means of identifying the automobile upon redelivery; and (3) where the status of the parties falls in between the above two categories and is controlled by the nature of the circumstances within which the parties deal. The first class of cases generally is held to be a lease or a license, whereas the second category is generally held to be a bailment. See 131 ALR 1175, et seq.; Lewis v. Ebersole, 244 Ala 200, 12 So2d 543. Perhaps the case most extensively cited in relation to the third category is Osborn v. Cline, 263 NY 434, 189 NE 483, wherein the court stated that the circumstances of each case must be considered in arriving at the nature of the relationship between a parking lot operator and an automobile operator who uses the lot for a fee.

■■ The most significant distinction between a bailment situation and a license or a lease situation (when the automobile is damaged or stolen while on the parking lot,) is that in the bailment situation negligence is presumed on the part of the parking lot operator where the automobile operator makes out a prima facie case that he turned the automobile over to the lot operator in good condition, but that the lot operator has either failed to return the automobile or has returned it in a damaged condition; the burden then devolves upon the parking lot operator to go forward with evidence that he was not negligent. Byalos v. Matheson, 328 Ill 269, 159 NE 242. Where, on the other hand, a lease or license

112

relationship is established by the evidence of the automobile operator, it is incumbent upon him to prove in what specific manner the parking lot operator was negligent or that the latter had assumed the duty to safeguard the automobile. (See the extensive treatment given to the subject of liability for loss or damage to automobiles left in parking lots or garages in the recent annotation in 7 ALR3d, beginning at page 927.)

 The creation of a bailment may be either by express or implied agreement; a delivery or transfer of possession of the property must be effected and there must be an acceptance of the property by the bailee. North v. City of Rockford, 237 Ill App 305, 307. While there need not be a delivery of the property in the technical sense, there must be an actual change of possession of the property from the bailor to the bailee. See 8 Am Jur2d, Bailments, § 5. From a reading of the agreed statement of facts it is evident that the status of bailor and bailee did not exist between Richard Wall and the defendant at the time the Wall automobile was stolen.

██ Richard Wall at no time left the Wall automobile in defendant's possession and control. The automobile was driven into the defendant's parking lot through one of the designated entrances and a machine dated, time-stamped ticket was received upon entry. Wall drove the automobile into the lot, undirected and unsupervised by any of defendant's agents, and chose a parking space within the lot suitable to himself. Wall then parked and locked the automobile, retaining the key. At no time did Wall come into contact with defendant's agents and the only contact he would have had would have been when paying the parking fee at one of the designated exits after he had secured the automobile himself and drove it to the exit. While it is true, as plaintiffs maintain, defendant could have restrained Wall from exiting the lot without paying the parking charges, this in no way re-

lates to any possession or control which defendant may have exercised over the automobile, but merely relates to the power of defendant to enforce its lien for the parking charges. See 1420 Park Road Parking, Inc. v. Consolidated Mut. Ins. Co. (DC Mun App), 168 A2d 900.

The dated and time-stamped machine dispensed ticket which must be presented upon leaving the parking lot was neither a means of identifying the vehicle nor was it an exercise of control over the vehicle by the defendant. It appears that every ticket dispensed from the entrance machines is identical except for the date and time markings thereon. The sole function of the ticket is for the computation of parking charges. In Greene Steel & Wire Co. v. Meyers Bros. Operations, Inc., 44 Misc2d 646, 254 NYS2d 299, the undisputed facts that the parking lot operator's method of operation of the lot, the signs posted around the lot, the ticket obtained by the automobile operator defining the service sold by defendant, and the automobile owner never having given possession or control to the defendant, led the court to conclude that defendant assumed no duty to safeguard plaintiff's automobile and to further conclude that the relationship between the plaintiff and the defendant was that of licensor and licensee. See also 1420 Park Road Parking, Inc. v. Consolidated Mut. Ins. Co. (DC Mun App), 168 A2d 900. Similarly in the case at bar, the agreed statement of facts involves no circumstances from which it may be inferred that Richard Wall intended to give possession and control of his automobile to the defendant after he had parked and locked the automobile, retaining the key, nor that defendant assumed any responsibility to safeguard the automobile.

■■ Plaintiffs cite several cases in support of the position that the operator of a parking lot enters an agreement to safeguard the automobiles parked on his

114

lot for a fee, none of which has any bearing on the question presented in the case at bar. In Nargi v. Parking Associates Corp., 36 Misc 836, 234 NYS2d 42, a reported trial court case, local fencing ordinances were involved requiring certain parking lots to be fenced, which requirement was extended by the court to apply to the defendant. The court proceeded on an assumption in that case that defendant had the duty to safeguard all automobiles which had been parked in the lot. The Nargi case consequently assumes the answer to the very question which is presented here. In the case of Galowitz v. Magner, 208 App Div 6, 203 NYS 421, the evidence was undisputed that defendant had attendants in the lot "looking after, taking care of the cars as they came in and went out" and the court found from the facts a bailment situation between the parking lot owner and the automobile driver. As was stated in Osborn v. Cline, 263 NY 434, 189 NE 483, the circumstances of each individual case must govern a determination of the relationship between the parties, from which flows the relative rights and obligations of the parties. In the case at bar, the undisputed facts show no obligation on the part of defendant to safeguard the Wall automobile and further show no bailor-bailee relationship between the parties.

Finally, plaintiffs' complaint does not charge defendant with negligence other than the negligent failure to uphold its contract to safeguard the Wall vehicle. As has been stated above, defendant assumed no burden to safeguard plaintiffs' vehicle and consequently could not have violated any duty in that regard. Furthermore, the complaint contains no specific charge of tortious or negligent conduct on the part of defendant, nor does the agreed statement of facts reveal any such conduct, which allegation and proof are necessary where a bailment situation has not been established.

The judgment is reversed and judgment is entered for defendant and against plaintiff for use of Travelers Insurance Company.

Judgment reversed and judgment entered against plaintiff.

LYONS, P. J., concurs.

BRYANT, J., dissents.