(No. 41034.—

CLIFFORD L. WALL *et al.,* Appellants, *vs.* AIRPORT PARKING COMPANY OF CHICAGO, Appellee.

*Opinion filed January 29, 1969.*

Epton, McCarthy, Bohling & Druth, of Chicago, (Bernard E. Epton, Edward A. McCarthy, and David S. Kreisman, of counsel,) for appellants.

Piety & Babiarz, of Chicago, (Philip A. Piety, of counsel,) for appellee.

Mr. Justice House delivered the opinion of the court:

Defendant, Airport Parking Company of Chicago, operator of a self-parking lot at O'Hare Airport as lessee of the city of Chicago, appealed to the Appellate Court, First District, from a judgment against it in favor of the insurer of an automobile stolen from the lot. The Appellate Court reversed, (88 Ill. App. 2d 108,) and we granted leave to appeal.

The cause was submitted on an agreed statement of facts. The lot is wholly enclosed, well lighted, paved and marked into parking spaces. Motorists enter through automatic gates and there receive a ticket bearing the date and time of arrival. They park in any available parking space, lock their automobiles, and retain the keys. When ready to depart they walk into the lot, pick up their vehicle and leave via an exit where the ticket is handed to an attendant to compute and collect the parking charges.

This is a case of first impression in this court although there is a great variety of holdings in the area of the liability of operators of parking-lot facilities, mostly by courts of intermediate jurisdiction. From this welter of decisions there emerge two principal classes of relationship between the automobile owner and the lot operator. One is that of the leasing of a parking space with no bailment being created. The other is a delivery of the vehicle into the possession and control of the lot operator thereby creating a bailment.

Typical of the first class of cases is where the owner parks his own car either at a place designated by an attendant or chosen by himself, retains the keys, and does not actually deliver the car to the lot operator. In the second class of cases, a bailment is usually created where the keys are left in the parked vehicle (at the request of the parking-lot attendant to permit moving it for the entrance or exit of other vehicles on the lot) and where tickets are issued identifying the car for redelivery. (See 38 Am. Jur. 2d, Garages and Filling and Parking Stations, sec. 28; 7 A.L.R. 3d, pp. 927-991, Annotations, Liability for Loss or Damage to Automobile Left in Parking Lot or Garage; 8 C.J.S., Bailments, sec. 1(2).) In final analysis, however, parking-lot cases do not readily lend themselves to precise categorization of whether the motorist is leasing space on the one hand, or whether delivery of the vehicle onto a parking lot creates a *prima facie* bailment. As was said by the Court of Appeals of New York in *Osborn* v. *Cline,* 263 N.Y. 434, 189 N.E. 483, 484: "Whether a person simply hires a place to put his car or whether he has turned its possession over to the care and custody of another depends on the place, the conditions and the nature of the transaction." In a case very similar to this, except that parking was in an enclosed parking garage and valuables in the car rather than the car itself were stolen, the Pennsylvania Supreme Court said: "Since here plaintiffs reserved pos-

session of the car at all times by retaining the keys thereto, defendant acquired no dominion over the vehicle nor any right to control removal of it; hence there was no bailment." *Taylor* v. *Philadelphia Parking Authority,* 398 Pa. 9, 156 A.2d 525, 527.

In recent years a new type of self-service vehicular parking lot has developed, particularly at the larger airports of this country. The one here involved is typical. A motorist gains admission to the lot through one or more automatic entrance gates, which open when he takes a machine dispensed ticket from an automatic dispenser. The ticket is stamped with the day and hour of arrival, but it does not identify any particular automobile or owner. No attendant is present nor is the motorist directed where to park, except that he is expected to park within the lines marking individual parking spaces. The motorist retains the keys. There is nothing to prevent him from moving the car from place to place within the confines of the lot as often as he chooses. He may not have (and probably has not) seen an attendant until he re-enters his car and proceeds to an exit where an attendant computes and collects the charges for the period of time the vehicle has been on the lot. This checking-out process is his only necessary contact with the lot operator or attendants.

In order to establish a bailor-bailee relationship there must be either an express agreement (there is none here) or an agreement by implication, which may be gathered from the circumstances surrounding the transaction, such as the benefits to be received by the parties, their intentions, the kind of property involved, and the opportunities of each to exercise control over the property. There must not only be a delivery of possession, but there must also be an acceptance, either actual or constructive, before there can be a bailment. (8 Am. Jur. 2d, Bailments, secs. 56, 57.) Applying these criteria to the facts here we find that the self-parking-lot operator primarily offers spaces for parking

with a minimum amount of labor, which presumably is reflected in the fees charged for use of the facilities. There undoubtedly is more protection to the users of the facilities than is afforded by street parking in that the parking lot is fenced, well lighted, attended around the clock by one to five attendants, and is patrolled by the Chicago police squad cars from time to time. But space rather than security is the primary purpose of a self-service parking lot. The motorist is, of course, benefited by having parking space reasonably close to the airport.

By its very nature a self-service parking lot must be open at all times to the public and the operator has no control over who uses the lot. True, temporary possession in the sense that the motorist leaves a vehicle on the lot may be said to have been given up, but actual control is retained by the act of locking the vehicle and taking the keys, thereby preventing its movement. There is no acceptance of the vehicle by the lot owner. Plaintiff asserts that *National Safety Deposit Co.* v. *Stead,* 250 Ill. 584, is analogous. There, the safe deposit company held itself out as safeguarding valuables, and security was that which was being bought by the public. Valuables were stored in vaults and entry was through iron gates manned by armed guards. It was inherent in the nature of the service offered that the primary objective was to safeguard customers. That case is not persuasive.

We are of the opinion that use of self-service parking lots, such as the one here involved, does not create a bailor-bailee relationship and the lot operator is not subject to the liability imposed by the rules relating to bailments.

Plaintiff infers that a *prima facie* case of negligence was made against the defendant, but the cases cited in support are all bailment cases. It is fundamental that where plaintiff is an invitee, as here, and a lease relationship is established, the lot·operator owes the duty of reasonable care in the operation of·the parking lot. But, it is just as

fundamental in the common law of negligence that the plaintiff has the burden of proving negligence on the part of defendant and that defendant's negligence was the cause of the loss. There is no proof of negligence in this case under the agreed statement of facts and plaintiff is not entitled to recover.

The judgment of the Appellate Court, First District, is accordingly, affirmed.

*Judgment affirmed.*