**EQUITY MUTUAL INSURANCE COMPANY, a Corporation, Plaintiff-Respondent,**

v.

**AFFILIATED PARKING, INC., Defendant-Appellant.**

No. 33447.

St. Louis Court of Appeals.

Missouri.

Dec. 16, 1969.

Riethmann, Soebbing, Lamb & Fitzgibbons, St. Louis, Donald E. Lamb, Centerville, for defendant-appellant.

Armstrong, Teasdale, Kramer & Vaughn, John J. Cole, Frank N. Gundlach, St. Louis, for plaintiff-respondent.

BRADY, Judge.

Plaintiff brought this action to recover from defendant the amount paid under a policy of insurance it issued to one Marsh covering loss resulting from the theft of Marsh's automobile while it was parked upon defendant's lot. The trial court entered judgment for plaintiff and defendant appeals.

There is no dispute as to the facts, the case having been tried upon an agreed statement. The parties also tacitly agree and tried this case upon the theory that if Marsh could have recovered then judgment must be for plaintiff. Some explanation of the general method of operation at defendant's parking lot is necessary to a full understanding of the issues here involved. Defendant operates the north parking lot at the municipal airport under a lease contract with the City of St. Louis, the owner of the property. This and another lot, also operated under contract by defendant, were the only parking facilities within one-quarter mile of the airport. A copy of the contract between the City and defendant was introduced into evidence. Paragraph 8(b) thereof specified defendant was to have a minimum of two station attendants and one parking lot supervisor on duty on the lot here involved at all times. Defendant was also required to have such other numbers of entrance and exit attendants on duty at all times as was necessary to provide an adequate quantity and quality of parking lot services to the "traveling public". It was stipulated that Marsh was one of the "traveling public".

There are some other provisions of the contract which are pertinent. Paragraph 5(b) provides for an inventory to be taken by the defendant between 12:01 a. m. and 4:00 a. m. of each day. The inventory is to show license numbers and a simple and effective description and entry date of each car. Those that stay overnight are to be referred to as "layover" cars. Then Paragraph 5(c) provides the procedure with respect to such automobiles when motorists are leaving the lot. Subparagraph (4) of Paragraph 5(c) provides that: "When the car of a motorist without valid claim check is not listed on the inventory, unless there is evidence to the contrary, the car shall be assumed to have been on the lot one day or less, and the full one-day parking fee shall be collected after the

motorist has made out an identification slip, hereinafter called 'I.D.' slip. An I.D. slip shall contain the date, name, address, phone number, driver's license number, and signature of the driver as shown on his driver's license and the license number and description of the car." Paragraph 5(c)(5) contains the same provision when the car of a motorist "without valid claim check is found on the layover inventory". Subparagraph (6) of Paragraph 5(c) provides that if a motorist refuses to cooperate in carrying out the operating procedures, "or if any motorist drives out of a lot without stopping and paying the proper parking fee, or if there is indication of auto theft or fraud against the City of the Operator, the Operator's personnel shall immediately call police and shall assist the police in every practical manner in properly handling the case." The contract also provides for remuneration to the City on the basis of the gross revenues derived from the operation of the parking lot.

Entrance to the lot is through automatic ticket dispensing machines. When a ticket is taken from the machine by the operator of the automobile the mechanical arm which blocked entry of the vehicle into the lot rises and allows the vehicle to enter. The mechanical gates lower behind the automobile once it is inside the lot, thereby blocking entry of additional automobiles and also preventing the exit through the entrance areas of automobiles already in the lot. The tickets issued by the mechanical ticket dispenser were for the sole purpose of determining the length of time the automobile remained on the lot and were retained in whole by the patron with no portion placed on the automobile for identification purposes. The date and time the automobile entered the lot were stamped on the ticket. The ticket had written on it that it was a license and the operator was not responsible for theft. This provision is immaterial to the instant appeal as it was stipulated neither Marsh nor his wife knew or had cause to know of such a provision. When an automobile was driven onto the lot the driver chose his own parking space and parked his own car. He was not requested to leave his keys nor was any other request made of him.

The lot was enclosed by a fence so that the only exits were the driving lanes past the location of two cashiers at the exit stations. These cashiers were the only employees present on the lot when the Marsh automobile was parked. Each cashier would compute the parking fee based upon the time stamped on the ticket the driver had received from the mechanical ticket device at the entrance, whereupon the patron would pay and leave.

The agreed statement of facts also discloses that Mrs. Marsh drove her husband's automobile to the airport in order to meet Mr. Marsh who was arriving on an incoming flight. She went through one of the mechanical ticket gates of the north parking lot and from the mechanical ticket dispenser obtained ticket No. 193220. No portion of the ticket was placed on the automobile. Mrs. Marsh chose her own parking place and parked the car herself. She locked the ignition, locked the car, and kept the key. Approximately thirty-five minutes later Mr. and Mrs. Marsh walked from the terminal to the location where she had parked the automobile. It was not there and neither was it found at any other location on the lot. Mrs. Marsh still had in her possession the keys to her automobile and the ticket issued when she entered the lot. The person or persons who took the Marsh automobile are unknown and their method of gaining entry into the automobile and removing it from the lot is equally unknown. No identification or I.D. slip was obtained by defendant's employees with respect to the Marsh automobile.

■ Given the liberal reading required of us the petition presents three theories of recovery stated in five counts. The first of these is bailment which is pled by a general allegation of defendant's breach of the bailment by failure to redeliver, and

also pled by setting forth the specific acts plaintiff contends constitute defendant's care of the property. The second theory of recovery stated in the petition is that of contract, and the third may be characterized as negligence. The trial court specifically found there was no bailment and based its judgment in favor of plaintiff upon two grounds: First, that Marsh was a third party beneficiary of the contract between the City and defendant, a contract defendant had breached; and Secondly, upon the theory that regardless of the relationship between Marsh and defendant—be it bailment, license, or lease—defendant's failure to obtain the "I.D. slip" constituted such negligence as to allow plaintiff's recovery. It requires no citation of authority to substantiate the statement that if plaintiff is entitled to recovery upon any theory pleaded the judgment must be affirmed regardless of whether the trial court's basis for its ruling is correct or not.

■■ Defendant contends plaintiff cannot maintain an action on this contract as Marsh was a "mere incidental beneficiary" of the contract and that the duty to make out an "I.D. slip" was purely contractual, thus no action in tort exists for its breach. The terms of the contract which is in evidence lead us strongly to the decision plaintiff was not a sufficient beneficiary to enable him to bring such an action. See Restatement, Contracts, § 145. However, under the facts of this appeal we need not decide that issue and do not reach our decision from that basis. This for the reason that, assuming arguendo such an action could be maintained by Marsh, there is no evidence to support the finding defendant had breached the contract. Of course, the duty to present such evidence rests upon plaintiff who urged the contract was breached.

There is no duty under the contract to obtain an "I.D. slip" except under the conditions stated in Subparagraphs (4) and (5) of Paragraph 5(c) of the contract. Subparagraph (5) provides that if an automobile "* * * without valid claim check is found on the layover inventory, I.D. slip shall be made out as provided in (4) above, * * *" and a full parking fee collected. Under the stipulated facts the Marsh automobile was placed upon the lot and somehow removed therefrom at such times it could not have been listed on the inventory. Since the Marsh automobile was not so listed there was no obligation upon the defendant to secure an "I.D. slip" under Paragraph 5(c) (5) of the contract regardless of whether the motorist had a valid claim check or not.

Insofar as the inventory is concerned, the applicable provision of the contract with reference to "I.D. slip" would be Paragraph (5) (c) (4), but that paragraph will not apply unless the motorist was "without valid claim check". Plaintiff insists the only inference to be drawn from the fact that after the theft Mrs. Marsh still had the claim check she received upon entering the lot is that the thief was "without valid claim check". We cannot agree such a finding is justified under the facts of this case. It must be remembered that a "valid claim check" as that phrase must be used in this appeal was a ticket that was in no way used for identification purposes. No portion of the alleged "valid claim check" was placed on the automobile to be compared with another portion to ascertain this was the correct automobile. The only function performed by the alleged "valid claim check" was to ascertain the length of time the automobile remained on the lot and thus the amount due defendant. It follows that a "valid claim check" under the circumstances of this case would be any claim check issued by the machine at the entrance. The possession of any such claim check would permit a person to take a vehicle from the premises upon payment of the amount due as determined from the date and time stamped on the claim check. Under such circumstances there is no evidence of any record in which defendant could have had knowledge whoever drove the Marsh car from the lot

was not the owner. It follows the fact that after the automobile was stolen Mrs. Marsh still had the claim check she was issued does not in and of itself prove defendant's servants allowed the Marsh automobile to leave the lot driven by someone "without valid claim check". That is merely one inference that can be drawn. Of equal strength is the inference defendant's servants were completely guiltless, the Marsh automobile having been driven from the lot by a person who drove another automobile onto that lot, securing a "valid claim check" as he came through the mechanical entrance, left the automobile he drove onto the lot and took the Marsh automobile, exhibiting a "valid claim check" to the cashier and paying the amount computed therefrom as he left. Or that the theft was accomplished by a person who found or stole someone else's "valid claim check", exhibited it, and paid the amount due thereon to the cashier. But we need not speculate on how the theft was actually accomplished. It is sufficient to state that under the circumstances shown in the instant appeal with respect to the alleged "valid claim check" the stipulated fact Mrs. Marsh still had the claim check she received upon entering the lot does not constitute proof defendant breached the provisions of Paragraph 5(c)(4) of the contract.

Paragraph 5(c) (6) affords another ground stated in the contract upon which plaintiff alleges a breach entitling him to recovery. There are several reasons why the language in this section of the contract does not authorize plaintiff's recovery. It should be noted the contract does not require any action by defendant's servants except that they call and assist the police. The agreed statement of facts does not contain any allegation that would authorize or justify the finding the defendant's servants in any way failed to so act upon being informed of the theft of the Marsh automobile. Another answer to this contention is that even the act of calling and assisting the police is only required upon the hap-

pening of three events: when a motorist refuses to cooperate in carrying out the proper checkout procedures; when a motorist drives out of the lot without stopping and paying the proper parking fee; or when there is an indication of auto theft or fraud. There is nothing in the stipulated facts that would in any way show the existence of any one of these three events. Until and unless any one or more of these events existed there was no duty upon the defendant under the contract to secure an I.D. slip. This paragraph of the contract does not afford a proper ground for plaintiff's contention of breach and the loss resulting therefrom.

■ Another provision of the contract plaintiff urges as a basis for recovery is that found in Paragraph 8(b) requiring a "parking lot supervisor" to be on duty "at all times". From the stipulation of facts it appears no such person was on duty at the time of the loss of the Marsh automobile. Plaintiff mentions this point only in passing in its brief. Doubtless this is due to the fact that there is no way to infer from the stipulated facts that the failure to comply with this provision of the contract is connected with or in any way caused the loss of the Marsh vehicle. In other words, there is no showing the damage resulted from the breach of the contract as to this provision. We hold this judgment cannot be affirmed on the ground of breach of contract.

We pass now to the other pleaded grounds for recovery. The trial court held that regardless of the proper determination to be given to the relationship between Marsh and defendant, the latter's failure to obtain the "I.D. slip" constituted such "negligence" as to compel a judgment in plaintiff's favor. The legal relationships usually created under a factual circumstance such as here involved are those of bailor-bailee, lessor-lessee, or licensor-licensee. We will consider each relationship in turn.

■ Was there a bailment created between Marsh and defendant? While there are many forms of bailment, in essence it is a contractual arrangement. See cases collected in 8 Am.Jur.2d, Bailments, § 43, p. 950; and in 8 C.J.S. Bailments § 1, p. 312. As generally used the word "bailment" has been held to signify a contract resulting from the delivery of a thing by the bailor to the bailee on condition that it be restored to the bailor according to his directions as soon as the purposes for which it was bailed are satisfied. Samples v. Geary, Mo.App., 292 S.W. 1066, l.c. 1066, 1067.

Plaintiff's petition pleads bailment in two different ways; alleging defendant's want of the proper degree of care generally and specifically. However, we are not here concerned with the effect of either form of pleading for the reason that regardless of who has the burden of going forward with the evidence—a matter determined by the form in which plaintiff stated his bailment theories (see Nuell v. Forty-North Corp., Mo.App., 358 S.W.2d 70[6, 7]; Weinberg v. Wayco Petroleum Co., Mo.App., 402 S.W.2d 597[2])—the constituent elements of bailment must be present. In Weinberg, supra, we quoted with approval from Suits v. Electric Park Amusement Co., 213 Mo.App. 275, 249 S.W. 656, l.c. 657, to the effect that to constitute a bailment relationship there must be such delivery to the bailee as would entitle him to exclude the possession of anyone else, even the owner, for the period of the bailment. We agree with the trial court that there was no such delivery in the instant appeal. As in Weinberg, we think this issue is determined by the principles stated in that case and taken from 24 Am.Jur., Garages, Parking Stations, and Liveries, § 29, 1965 Supplement, Note 2, as follows: " 'The defendant parking lot proprietor has almost invariably been held not liable for loss or damage to cars left on his parking lot, where his lot is one in which attendants collect fees, merely designating the place to park, and the driver of the car usually parks his car himself, without any actual delivery to or redelivery by the proprietor of the parking lot, the car being locked or not as the driver wishes, and no tickets being ordinarily issued by the parking lot proprietor.' " As is obvious from a reading of the above quotation the only matter stated therein in question in the instant appeal is that in this case there were tickets issued by the defendant. However, it is clear from all the evidence these tickets were not for the purpose of identifying the specific automobile bailed, for stating the terms of the bailment, or for any purpose other than determining the amount of time the car was on the lot and thus the amount owed defendant upon its removal. That being so, the tickets were not such as would constitute evidence of the control and delivery necessary to create a bailment. In fact, considering the purpose for which they were intended—to determine the amount due defendant—the tickets tend to refute the creation of such a relationship. For a case strikingly similar upon the facts to the instant appeal, with reference to the "claim check" being dispensed by an automatic apparatus upon entry to the lot and exit being granted upon payment of the time stamped upon the check to the attendant stationed at the exit gate, see 1420 Park Road Parking v. Consolidated Mutual Insurance Company, D.C.Mun. App., 168 A.2d 900. The court in that case reached the same decision as we reach in the instant appeal. However, compare Nargi v. Parking Associates Corporation, 36 Misc.2d 836, 234 N.Y.S.2d 42. Under the circumstances prevalent in this appeal there was not the "full delivery" referred to by this court in Suits v. Electric Park Amusement Co., supra, and in Weinberg, supra. For this reason we hold there was no bailor-bailee relationship created between Marsh and defendant.

■ Courts are often at a loss to characterize the relationship of the parties if it not be one of bailment. In most cases it is unnecessary to do so for the plaintiff usually confines himself to at-

tempting to recover upon a theory of bailment, and if he fails it is unnecessary for the court to state just what relationship was created. The usual terms employed are those of lessor-lessee or licensor-licensee. As an example of the difficulty courts have in distinguishing between the two relationships, compare Frum v. Yonkers Raceway, Inc., N. Y., 204 N.Y. S.2d 422, and Travelers Insurance Co. v. Pond, Ohio Com.Pl., 143 N.E.2d 189. In these two cases, on what seems essentially similar factual situations, one court found the relationship to be that of lessor-lessee while the other found it to be licensor-licensee. This matter has been settled in Missouri where it has been held the distinctive feature of a lease of real or personal property is that it conveys an interest in the property for a fixed or definite period of time. Sharp v. W. & W. Trucking Company, Mo., en banc, 421 S.W.2d 213[2], and cases there cited. Under the facts in the instant appeal there was no direction to Marsh to park on any certain place, the choice of the parking location being left to Mrs. Marsh's discretion. It seems clear there was no attempt or intention to convey any interest in the property. Accordingly, the relationship is properly one of licensor-licensee rather than lessor-lessee. Sharp v. W. & W. Trucking Company, supra. This same distinction seems to be recognized in Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543, a parking lot case where the distinction is stated in the terms of the motorist's exclusive right to use a designated space creating a lessor-lessee relationship.

■ Regardless of the difficulty courts have in arriving at this distinction, the distinction itself is probably more academic than substantial so far as the degree of care is concerned. The more modern, and we think better, trend of judicial reasoning is to accept the standard of care as being the same duty of using ordinary care regardless of whether the relationship be one of bailor-bailee, licensor-licensee or lessor-lessee. What constitutes ordinary care or what justifies a finding such care was lacking varies and depends upon the facts and circumstances in each case, but the standard of ordinary care remains constant. In so stating, however, we emphasize that such a standard is to be applied only to situations like that in the instant case. We are in no way attempting to make the standard of ordinary care applicable to all licensor-licensee situations and in particular not to those where a person comes upon the land of another and is injured. In such situations the duty owed the injured person does indeed flow from the relationship of the parties and is different depending upon that relationship. For example, a bare licensee; that is, one who goes on the owner's premises out of curiosity or for private convenience, takes the premises upon which he enters as he finds them and the owner is only liable to him in the event of wantonness .or for some form of intentional wrong or active negligence. On the other hand, an invitee is one who goes on the premises by the owner's express or implied invitation usually extended in connection with the business of the owner, and the land owner owes the duty to take ordinary care to prevent the invitee's injury. Abel v. Campbell 66 Exp., Inc., Mo.App., 378 S.W.2d 269; Mo.Digest, Negligence, ☞32(1). That is not the situation with which we are here dealing and neither is it the situation to which we intend to make applicable the ruling a licensee owes ordinary care only. Keeping in mind the distinction between the line of cases involving injuries to one who enters upon the premises of another as contrasted with the situation presented in the appeal at bar, we hold that in parking lot cases regardless of the character of the legal relationship between the parties there is a duty of ordinary care owed by the operator of the premises toward the automobile left thereon.

■ Upon the stipulated facts, did the plaintiff bear the burden of proving de-

fendant failed to use such care? The trial court found the failure of defendant's employees to obtain the "I.D. slip" constituted proof of such a lack of care. It is obvious from reading the opinion by the learned trial court that its finding in this regard is based in turn upon the finding that those who stole the Marsh automobile left the parking lot without exhibiting a "valid claim check", and indeed this is the only stipulated fact that would support such a finding. Thus it is apparent plaintiff's contention with regard to defendant's negligence is bottomed upon the same evidence it urged as constituting proof of defendant's breach of contract with reference to the failure to secure an "I.D. slip"; i.e., after the theft Mrs. Marsh still had the claim check she received upon entering the lot. The reasoning by which we arrived at the decision that fact does not constitute proof defendant breached its contract equally disposes of the contention defendant was negligent. We need not set out that reasoning again, it being sufficient to state we hold the fact that after the theft Mrs. Marsh still had the claim check she received upon entering the lot gives rise to other inferences which exculpate defendant and which are of equal strength and equally inferable to that upon which plaintiff relies. That being so, it does not constitute proof of defendant's negligence.

In its brief plaintiff makes the statement defendant also breached its duty to Marsh by failing to have a supervisor present to guard against thefts. The point is not otherwise argued in the brief. To adopt plaintiff's contention would be to rule that, as a matter of law, the exercise of ordinary care in the operation of a parking lot requires a supervisor. There was no duty upon defendant to have a supervisor absent a showing defendant could reasonably have expected thefts to occur if he was not present. There is no stipulated fact to support, directly or by inference, such a finding. We rule this point against plaintiff.

The judgment is reversed and the cause remanded to the trial court with instructions that it enter its judgment in favor of defendant.

WOLFE, P. J., and DOWD, J., concur.