## THE BROADVIEW APARTMENTS COMPANY *v.* GLENN H. BAUGHMAN, ETC.

[No. 361, September Term, 1975.]

*Decided January 30, 1976.*

The cause was argued before MORTON, MENCHINE and MELVIN, JJ.

150

*Joseph S. Matricciani*, with whom was *Robert E. McManus* on the brief, for appellant.

*John R. Costello* for appellee.

MELVIN, J., delivered the opinion of the Court.

This is an appeal by the Broadview Apartments Company (Broadview) from a judgment holding it liable for the loss of Glenn H. Baughman's (appellee's) automobile which had been parked in the garage attached to the Broadview Apartments.

In 1966 appellee was an apartment tenant under a written lease in the Broadview Apartments located in Northwest Baltimore. Under a separate agreement, he paid Broadview $15.00 a month to park his car in the Broadview Garage. The garage is beneath the apartment building and is an enclosed two level garage, "one in the basement, one on the ground level". There is an entrance and separate exit on the lobby level, and a single exit and entrance to the basement. There is no attendant at the entrance and exit on the lobby level, although there is one on the basement level. The only security devices of which Mr. Baughman was aware was that there was a security guard on duty twenty-four hours of the day, and each tenant of the garage was provided with a key to the garage door, although he was aware that the doors were not closed at all times.

On the night of November 23, 1966, Mr. Baughman parked his car in his assigned spot on the lobby level, locked the car and took the keys with him. He testified that he did not recall seeing the security guard that evening. When he returned the next day, his car was gone. He notified the police that it was missing. It has never been recovered.

Broadview rested its case without putting on any evidence. It contends that the evidence failed to establish that the car had been delivered to it and therefore it was not a bailee of the automobile. The trial judge, sitting as the trier of fact, did not agree, holding that Broadview was a bailee of the automobile and, as such, was liable for the

value of the missing automobile. Broadview filed this timely appeal, and again asserts that appellee failed to show by his proof that Broadview was a bailee of the automobile.

> A bailment is "the relation created through the transfer of the possession of goods or chattels, by a person called the bailor to a person called the bailee, without a transfer of ownership, for the accomplishment of a certain purpose, whereupon the goods or chattels are to be dealt with according to the instructions of the bailor". *Dobie on Bailment & Carriers* as quoted in *Refining Co. v. Harvester Co.*, 173 Md. 404, 414 (1938). . . .
>
> "To constitute a bailment there must be an existing subject-matter, a contract with reference to it which involves possession of it by the bailee, delivery, actual or constructive, and acceptance, actual or constructive." *Refining Co.* at 415.

Once the bailment relationship is proven certain responsibilities flow from the relationship. The bailee in accepting possession of the bailed property assumes the duty of exercising reasonable care in protecting it. *Hambleton v. McGee*, 19 Md. 43 (1862). He, however, is not an insurer and owes only such duty of care as persons of common prudence in their situation and business usually exercise towards similar property belonging to themselves. *Trans-System Service, Inc. v. Keener*, 249 Md. 369 (1968); see also *Fox Chevrolet Sales v. Middleton*, 203 Md. 158 (1953):

> Where, however ". . . a demand and an unexplained refusal to deliver [bailed property] are proven, a *prima facie* case of negligence is made out; yet, when the loss or injury is accounted for as having been occasioned by a cause which would excuse the bailee, such as burglary of his premises, then the defense is complete, unless the bailor follows by showing that the bailee, by the exercise of ordinary care and diligence might have avoided the loss or injury. The burden of proving negligence never

shifts from the plaintiff. He must prove the delivery, the bailment and the failure to return; thereupon, it is incumbent upon the bailee to explain that failure. If he does so, the bailor must prove that the bailee failed to use ordinary care and diligence to safeguard such property and that his failure to perform that duty caused the loss." *Fox Chevrolet Sales* at 161.[1]

From the above it is readily apparent that the answer to the threshold question of whether a bailment exists will have not only a procedural but often times a substantive impact on the outcome of the case. If no bailment is shown, and the owner of the property is a mere licensee or lessee of the storage space, then in order to recover against the defendant garage owner the plaintiff would have to prove specific acts of negligence on the part of the defendant proximately causing loss or injury of plaintiff's property. Absent a bailor-bailee relationship, the plaintiff would not have the benefit of any inference or presumption of negligence that arises from a mere showing of non-return of his property if that relationship existed.

The question of whether the owner or operator of a garage or parking lot is a bailee of the cars left there has never been decided by a Maryland Appellate Court.[2] The issue, however, has arisen on numerous occasions in other jurisdictions. See generally Jones, *The Parking Lot Cases*, 27 Geo. L. J. 25, 162 (1938); See Annot. 1930, 65 A.L.R. 431; 1940, 131 A.L.R. 1175; and 7 A.L.R.3d 927 and 1975 Supplement to 7 A.L.R.3d 927.

The courts have uniformly found a delivery of possession to the parking lot operators, and therefore a contract for bailment, where the keys are surrendered with the car or

---

1. The view that the proof of burglary is a complete defense is adopted by only a minority of the jurisdictions that have considered the question. The majority place the burden on the bailee to prove that the burglary was not occasioned by his own negligence. See Jones, *The Parking Lot Cases* (1938) 27 Geo. L. J. 162. Corrao v. Dewey Garage Corp., Sup. 24 N.Y.S.2d 592.

2. In Goldberg v. Kunz, 185 Md. 492 (1946) a car owner stored his car in a garage. When he returned for the car it was damaged. The court implied that an express bailment had been created, but found liability on the part of the garage because of its specific act of negligently hiring the attendant who stole the car.

where the car is parked by an attendant. See *Goldberg v. Kunz, supra*, and *Beetson v. Hollywood Athletic Club*, 109 Cal. App. 715, 293 P. 821 (1930). Some courts have also found a bailment where the patron parks his car himself and retains the keys, but in most such cases there have been other factors present bearing on the parking lot operator's control over the car. See *Marine Insurance Co. v. Rehm*, 177 So. 79 (La. App., 1937); *Jackson v. Metropolitan Gov't. of Nashville and Davidson County*, 483 S.W.2d 92 (1972). Some other factors which have been considered to be important are: (1) whether there are attendants at the entrances and exits of the lots, (2) whether the car owner receives a claim check that must be surrendered before he can take his car, (3) whether the parking lot is enclosed, and (4) whether the parking lot operator expressly assumes responsibility for the car. No single factor has been viewed as determinative of the issue. The law has probably been best stated in *Osborne v. Cline*, 263 N. Y. 434, where the New York Court of Appeals stated that

> "Whether a person simply hires a place to put his car (licensor-licensee relationship), or whether he has turned its possession over to the care and custody of another (bailee-bailor relationship) depends on the place, the conditions and the nature of the transaction", at 437.

In the instant case we think the evidence is legally insufficient to establish that a bailor-bailee relationship existed. Appellee merely rented a parking space monthly; he parked his own car, locked the car and took the keys with him. There was no testimony that Broadview had a set of keys for the car or had any right or authority to move or exercise any control over the car. The parking garage was laid out in such a manner that it was possible for appellee to park his car without any attendant even being aware of his presence in the garage. Appellee entered into the monthly lease arrangement with full knowledge of how the garage operated. He was not required to check his car in or out, and there was no evidence whatsoever that control of the car was ever turned over to the operators of the garage, or that they

ever accepted delivery or control. Nor was there any evidence that Broadview expressly contracted or asserted that the car would be safe from theft while in the garage.[3] Compare *Schleisner Co. v. Birchett,* 202 Md. 360 (1952), cited by appellee, where an employer told an employee she could keep her fur coat in the employer's executive closet and *agreed to be responsible for it.*

In a case factually very similar to the present case, employees at Kennedy Airport in New York paid $10.00 a month to park in an enclosed lot. A magnetic card was used to gain entrance to the lot, but no attendants were at the exits. There was one guard on the premises for general security. The Civil Court of New York City in *Peralta v. Port of New York Authority,* 68 Misc. 2d 302, 326 N.Y.S.2d 776 (1971) found that the parking lot was liable for the loss of Peralta's automobile. The opinion, however, implied responsibility more from the mere payment of the $10.00 a month parking fee than from evidence of delivery to the parking lot. The court could not imagine the defendant saying

> "Here you are, employees, here's an exclusive lot to park your cars, that's it! You get nothing else! Only the chosen few, the paid-up employees, can drive in but . . . anyone could leave the lot". at 784.

We, however, think that is exactly what Peralta received in that case and what appellee received in the present case. That is not to say he paid $15.00 and received nothing in return. In fact, for his monthly rent he was assured of a convenient parking space, which because of its enclosure, protected him and his automobile from adverse weather. He was much better off than if he parked on the street, for in the city, especially in an area with high rise apartments, there is no guarantee that one will find a parking space within a safe walking distance of one's home or apartment.

---

**3.** In fact, the lease for the apartment specifically included a disclaimer of responsibility for personal property left in the garage.

The mere fact that he paid a monthly rent for an enclosed parking space, however, does not, standing alone, raise an inference of a bailment contract. The Supreme Court, Appellate Division of New York, apparently adopted the same view, for it unanimously reversed the Civil Court's ruling in *Peralta v. Port of New York Authority* in an opinion reported at 76 Misc. 2d 1086, 351 N.Y.S.2d 787 (1973). It noted that

> "While there was some measure of control by defendant over the lot ... there was no such assumption of dominion and control as would create a bailment". at 788.[4]

On the record before us, as we have indicated, there is insufficient evidence to warrant a finding of a bailor-bailee relationship between the parties. The trial court was wrong in finding there was such a relationship. There being no bailment, the burden was upon the plaintiff below (appellee here) to produce sufficient evidence of specific acts of negligence on the part of Broadview or its employees (unaided by any inference of negligence from the fact that the car was missing) from which the trier of fact could predicate a judgment in his favor. The record is devoid of any such evidence. The mere fact that Broadview may have employed a security guard and that the appellee's car was missing is not enough. As the trial judge correctly stated, Broadview (even if it were a bailee) was not an insurer.

*Judgment reversed.*
*Costs to be paid by appellee.*

---

**4.** For other examples of cases where the New York Supreme Court Appellate Division has overruled Civil Court findings of bailment in "parking lot" cases see Ellish v. Airport Parking Co. of America, 345 N.Y.S.2d 650; Liberty Mutual Insurance Co. v. Meyers Brothers Op., Inc., 347 N.Y.S.2d 568; and for other examples of no bailment, see Greene Steel and Wire Co. v. Meyers Bros. Op., Inc., 254 N.Y.S.2d 299 (1964), Hogan v. O'Brien, 206 N.Y.S. 831. Affd. 208 N.Y.S. 477.