514 A.2d 912

**Gerald J. DUNEGAN, Appellant,**

v.

**APICO INNS OF GREEN TREE, INC., Appellee.**

Superior Court of Pennsylvania.

Argued March 25, 1986.

Filed Sept. 2, 1986.

Joseph Colavecchi, Clearfield, Stephen L. Dugas, Johnstown, for appellee.

Before ROWLEY, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

The sole issue in this appeal is whether a motor inn which provides an area in which its patrons can park their automobiles becomes liable on a theory of implied contract to a patron whose vehicle is stolen by a third person. The trial court held that under the circumstances of the instant case ·there could be no such liability and entered summary judgment in favor of the owner of the motor inn. We affirm.

On Friday, June 15, 1984, Gerald J. Dunegan, a dentist, together with his wife and two dental assistants, drove to the Green Tree Holiday Inn, a motor inn owned by appellee, Apico Inns of Green Tree, Inc., for the purpose of attending a dental seminar. Upon arrival, Dunegan registered at the front desk. Prominently displayed on the front desk was a sign which said: "We [the inn] are not responsible for damage to or theft from any parked automobile." After completing his registration, Dunegan parked his vehicle, a 1983 Oldsmobile, on a paved, unfenced lot provided by the inn for parking by its guests. Dunegan paid no separate fee for parking his vehicle, and the motor inn did not issue a claim ticket. In addition, the motor inn did not employ parking lot attendants to supervise the entrances and exits of the parking area. After Dunegan had selected a parking place, he locked the doors to his automobile, retaining the keys, and proceeded to his room. Later that evening or early the next morning, his Oldsmobile was stolen from the lot. When the vehicle was later found, it had been stripped of its parts and was appraised as a total loss.

Dunegan commenced an action against the owner of the motor inn to recover the value of the automobile and its contents. The complaint averred two theories of recovery: 1) breach of a contract of bailment; and 2) negligent breach of an implied contractual duty to prevent the theft of automobiles from the parking lot. The motor inn owner moved for summary judgment.[1] During oral argument thereon, Dunegan abandoned the bailment theory and elected to proceed against the motor inn owner solely on the basis that the owner of the motor inn had negligently

---

**1.** Although the record forwarded to this Court fails to include the defense motion for summary judgment, it is clear that such a motion was filed. Indeed, the plaintiff-appellant filed an answer thereto which is a part of the record. Moreover and in any event, the trial court considered the motion for judgment and thereafter entered summary judgment against the plaintiff-appellant. The plaintiff, therefore, is out of court, and an appeal from the judgment entered by the trial court is properly before this Court. The present state of the record does not create any impediment to meaningful review of the summary judgment or to the rendering of a decision on the issue raised by the appellant.

breached a duty of care imposed by an implied contract. The trial court entered summary judgment for the owner of the motor inn, holding that there was no implied contract requiring that it safeguard appellant's automobile against theft by the independent act of a third person. Dunegan appealed.

"Summary judgment 'shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Morgan v. Johns-Manville Corp.*, 354 Pa.Super. 58, 61, 511 A.2d 184, 186 (1986) quoting Pa.R.C.P. 1035(b).

■ The duty of care owed by the operator of a parking lot is determined according to the legal relationship existing between the operator of the lot and an individual who parks his or her automobile there. 38 Am.Jur.2d *Garages, and Filling and Parking Stations*, § 29. See: *Taylor v. Philadelphia Parking Authority*, 398 Pa. 9, 11–12, 156 A.2d 525, 526–527 (1959); *Sparrow v. Airport Parking Co. of America, Inc.*, 221 Pa.Super. 32, 35–36, 289 A.2d 87, 90 (1972). See also: *Lewis v. Ebersole*, 244 Ala. 200, 201, 12 So.2d 543, 544 (1943). Pennsylvania courts have recognized three types of legal relationships which may be created. The distinguishing factor is the extent to which the parking lot operator has exercised control over the vehicles which have been parked upon its lot. See: *Taylor v. Philadelphia Parking Authority, supra; Sparrow v. Airport Parking Co. of America, Inc., supra.*

■ The first relationship recognized by the courts is that of bailor and bailee. It exists "where the garage attendants collect fees, assume control of the cars, park them and move them about within the garage as they find convenient, the keys are left in the cars and tickets are issued as means of identifying cars upon redelivery." *Taylor v. Philadelphia Parking Authority, supra*, 398 Pa. at 12, 156 A.2d at 526–527. Where this relationship exists, the lot owner is

generally responsible for loss or damage to vehicles under its control. *Id.*, 398 Pa. at 12, 156 A.2d at 527.

■ The second type of relationship, that of lessor-lessee, exists "where an owner rents space in a parking lot, drives his automobile therein, locks it or not as he chooses, and for all practical purposes retains control thereof." *Id.*, 398 Pa. at 12, 156 A.2d at 526. Under this relationship, the lessee acquires an interest in a designated place on the lot for a fixed or definite period of time. See: *Lewis v. Ebersole, supra* at 201, 12 So.2d at 544; *Equity Mutual Insurance Co. v. Affiliated Parking, Inc.*, 448 S.W.2d 909, 914–915 (Mo.App.1969). A lessor of automobile parking privileges "is not [a] bailee of the parked car and consequently is under no duty to guard against loss by theft." *Taylor v. Philadelphia Parking Authority, supra*, 398 Pa. at 11, 156 A.2d at 526. See: 9 *Williston on Contracts*, § 1065 (3d ed. 1967).

■ The third type of legal relationship which may be created is that of licensor-licensee. See: *Sparrow v. Airport Parking Co. of America, Inc., supra*, 221 Pa.Superior Ct. at 38–39, 289 A.2d at 91. Unlike a lease, a license does not confer any interest in the parking lot to the automobile owners who park there; rather, it gives them only "the right to use a portion of the lot for the strictly limited purpose of parking their automobiles for a period of time entirely within their own control." *Id.*, 221 Pa.Superior Ct. at 39, 289 A.2d at 91. See: *Equity Mutual Insurance Co. v. Affiliated Parking, Inc., supra.* Apart from this distinction, a license is similar to a lease in that it creates no affirmative duty of care on the part of the owner of the parking lot, as licensor, to protect against loss by theft. See: *Lewis v. Ebersole, supra; Porter v. Los Angeles Turf Club, Inc.*, 40 Cal.App.2d 840, 105 P.2d 956 (1940); *Wall v. Airport Parking Co. of Chicago*, 88 Ill.App.2d 108, 232 N.E.2d 38 (1967), *aff'd*, 41 Ill.2d 506, 244 N.E.2d 190 (1969); *Broadview Apartments Co. v. Baughman*, 30 Md.App. 149, 350 A.2d 707 (1976); *McFarland v. C.A.R. Corp.*, 58 N.J.Super. 449, 156 A.2d 488 (1959); *Ellish v. Airport Parking*

*Co. of America, Inc.,* 42 A.D.2d 174, 345 N.Y.S.2d 650 (1973), *aff'd,* 34 N.Y.2d 882, 359 N.Y.S.2d 280 (1974). A duty to protect the licensee's automobile from theft will arise only if the licensor has undertaken responsibility for safeguarding the vehicle as part of a contractual agreement between the parties. See: *Sparrow v. Airport Parking Co. of America, Inc., supra,* 221 Pa.Superior Ct. at 39, 289 A.2d at 91. See also: *Lewis v. Ebersole, supra* at 201, 12 So.2d at 544.

In the instant case, Dunegan did not surrender possession of his automobile to the inn. He retained the keys to his car, and the vehicle was accessible to him throughout his stay. Thus, no bailment was created. Dunegan was granted no more than a privilege to park his vehicle on the lot because of his patronage of the inn. Under these circumstances, the legal relationship existing between the motor inn and Dunegan was that of licensor-licensee.

As a licensor, the owner of the motor inn was under no duty to protect the vehicles of its guests from theft. Appellant argues, however, that the motor inn owed him a duty to safeguard his automobile from theft which arose by implied contract. In support of this assertion, he relies upon the decision of this Court in *Sparrow v. Airport Parking Co. of America, supra.* This reliance is misplaced.

In *Sparrow,* the plaintiff's automobile had been stolen from a public parking lot operated by the defendant. Upon entering the lot, the plaintiff-owner had been issued a claim ticket from an automatic vending machine. The ticket contained the following printed statement: "This ticket must be presented to identify car." After taking the ticket, the plaintiff selected a parking place, locked the vehicle's doors, and left with the keys. Although the lot was completely enclosed by a fence and its exits monitored by the defendant's employees, the plaintiff's automobile was missing from the lot upon his return eleven days later. The plaintiff commenced an action against the parking lot owner to recover for the loss of his car. He alleged, inter alia, that the defendant had violated the terms of an implied

contract existing between the parties which obligated the defendant to exercise care to prevent the theft of his automobile. The trial court entered summary judgment for the operator of the parking lot, and the plaintiff appealed. The Superior Court reversed. In doing so, it noted that a licensor-licensee relationship had existed between the parties when the plaintiff's car was taken from the parking lot. *Id.*, 221 Pa.Superior Ct. at 39, 289 A.2d at 91. The Court observed that a contract had been entered when the plaintiff took the claim ticket from the automatic vending machine. *Id.* When the owner took the ticket, the Court held, the plaintiff had agreed to pay the posted rate in return for the privilege of parking on the defendant's lot and the operator of the lot had agreed to exercise care in protecting the vehicle. *Id.*, 221 Pa.Superior Ct. at 39–41, 289 A.2d at 91–92. The Court opined that although there was no written agreement between the parties, the terms of the contract could be implied from the circumstances surrounding its formation. *Id.* These terms, the Court held, could be found from the following: 1) the lot had been enclosed by a fence; 2) the defendant had maintained a policy requiring the presentation of a claim ticket before any vehicle could be removed from the lot; and 3) the defendant had employed attendants to supervise the exits to the lot twenty-four hours a day. *Id.*, 221 Pa.Superior Ct. at 41, 289 A.2d at 92. From these circumstances, the Court held, there were sufficient facts to permit the trier of the facts to conclude that the defendant had impliedly contracted to protect the plaintiff's automobile from theft while it remained on the lot. *Id.*

The circumstances in *Sparrow* are different than the facts of the instant case. Unlike the plaintiff in *Sparrow*, Dunegan paid no charge for the privilege of parking on the motor inn's parking lot. Rather, the privilege of using the lot was accorded gratuitously to him as an incident of his patronage of the motor inn. Thus, in contrast to *Sparrow*, there existed no "contract" to safeguard the vehicle while it was parked at the motor inn. The absence of an agreement

to safeguard appellant's automobile was confirmed by facts which demonstrated unequivocally that the owner of the motor inn had assumed no responsibility for safeguarding vehicles which had been parked on its lot. Thus, by a sign posted in its lobby, the motor inn had expressly disavowed any liability for the theft of automobiles from its parking lot. Moreover, unlike the parking lot operator in *Sparrow,* the inn had constructed no fence around its parking area, had not issued any claim checks to guests parking on the lot, and had not employed attendants to monitor the exits.

Appellant has been unable to point to any contractual duty, express or implied, which required the motor inn to safeguard his vehicle against theft by a third person. In the absence thereof, the appellee-owner cannot be held liable for the theft of the dentist's automobile. Because the motor inn owner was entitled to judgment as a matter of law, the trial court properly entered summary judgment in its favor.

Judgment affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I must respectfully dissent from the majority's determination to reach the issue presented on this appeal.

This is an appeal from an order by the Court of Common Pleas of Clearfield County which states as follows:

Now, this 23rd day of August, 1985, it is the Order of this Court that Defendant's Motion for Summary Judgment be and is hereby granted and judgment entered in favor of the Defendant and against Plaintiff.

The granting of a Motion for Summary Judgment is governed by Pa.R.Civ.P. 1035. This rule states in pertinent part:

(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any deposition, answers to

interrogatories, admissions on file and supporting affidavits.

*Id.*

While the official docket entries which were forwarded to this Court reveal an Affidavit In Support of Motion For Summary Judgment was filed on August 8, 1985 and An Answer to Motion For Summary Judgment was filed August 15, 1985, the docket entries are silent on the filing of a Motion For Summary Judgment.

> So far as we are concerned, the record is "[t]he original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court...." Pa.R.A.P. 1921. We have examined these papers, and [appellees] Motion is not among them. Nor, may we add, is there any reference to the Motion in the docket entries. Therefore, we may not consider the Motion. In saying this, we are aware that appellants have printed as part of their Reproduced Record what purports to be [the] Motion.... But a paper not of record may not be made of record simply by reproducing it.

*Pittsburgh's Airport Motel v. Asphalt,* 322 Pa.Super. 149, 152, 469 A.2d 226, 228 (1983) (Superior Court unable to consider motion for leave to amend complaint which was not filed in trial court).

Although the trial court opinion states "Defendant has filed a Motion for Summary Judgment...." (Trial Court Opinion at 2), "a fact cannot become of record by virtue of its inclusion in the trial court opinion." *Hatalowich v. Bednarski,* 315 Pa.Super. 303, 306, 461 A.2d 1292, 1294 (1983). "Our refusal to formally recognize the existence of a motion in no way indicates that we discredit the word of the trial court.... We are simply constrained from taking cognizance of this motion having been made on the basis of the record before us." *Id.*

Pennsylvania Rule of Appellate Procedure 1926 provides, in part:

Correction or Modification of the Record

If any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by that court after notice to the parties and opportunity for objection, and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident ... the appellate court ... of its own initiative may direct that the omission ... be corrected....

Our appellate courts have, on several occasions, remanded a case for an evidentiary hearing as to whether a motion had been made. *Commonwealth v. Harbaugh,* 253 Pa.Super. 24, 384 A.2d 957 (1978) (requesting points for charge); *Commonwealth v. Walsh,* 252 Pa.Super. 111, 380 A.2d 1307 (1977) (post-verdict motions) *Commonwealth v. Hobson,* 481 Pa. 526, 393 A.2d 29 (1978) (motion for a change of venue).

In the interests of having this case decided on the basis of an accurate record, we follow that example. We remand the case before us for an evidentiary hearing, finding and potential supplementation to the record on whether or not a motion ... was made by appellee.

*Hatalowich v. Bednarski, supra,* 315 Pa.Super. at 306, 461 A.2d at 1294.

This court, in fact this very panel, in the case of *Commonwealth v. Williams,* 357 Pa.Super. ——, 516 A.2d 352 (1986) refused to reach the merits of appellant's appeal because the record as certified did not contain notes of testimony from the trial court. I totally agreed with that decision and agree with the principle that if the record as supplied to the Appellate Court is not complete we should decline review.

Therefore, in my view the appropriate decision of this panel of this court at this time would be to either remand for completion of the record or dismiss the appeal for failure to have a complete record.