Sparrow, Appellant, *v.* Airport Parking Company of America.

Argued December 10, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Leonard S. Wissow,* with him *Wissow and Odza,* for appellant.

*Austin Hogan,* with him *Krusen, Evans and Byrne,* for appellee.

OPINION BY HOFFMAN, J., March 24, 1972:

This is an appeal from the lower court's entrance of summary judgment in favor of appellee Airport Parking Company of America.

The facts, as set forth in the pleadings and in an affidavit submitted by appellee, are as follows:

On December 3, 1968, appellant drove his automobile into Philadelphia International Airport's public parking lot which is leased and operated by appellee. In order to obtain entry to the lot, appellant took a claim check from an automatic vending machine at the lot's entrance. This claim check was stamped with the date and time of entry and contained the following statement: "[t]his ticket must be presented to identify car."

Upon the vending machine's release of the ticket, a gate opened permitting the appellant's automobile to enter the parking lot. No employee of appellee was present at the entrance gate. Appellant then selected his own parking space as required by the appellee, locked his car, and took the keys. On December 11, 1968, appellant returned for his automobile and discovered that it was missing from the lot. Appellee was unable to produce appellant's car or explain the circumstances of its loss.

Appellee's parking lot is completely enclosed by a fence, and the exits from the lot are controlled by appellee's employees. These attendants take the claim checks from patrons, compute the amount owed, and accept payment. If the driver of a vehicle seeking exit cannot provide the ticket received upon entry, appellant claims that the attendant has been instructed to obtain proof of ownership of the vehicle before allowing it to pass.

Appellant contends on appeal that the entrance of summary judgment by the lower court was error for

the following reasons: (1) the relationship between the parties was that of bailee and bailor, the bailor having the duty to exercise reasonable care to safeguard the bailee's property; (2) a term of the implied contract between the parties obligated appellee to exercise care to protect appellant's automobile from theft, and (3) a parking lot licensee is liable for the negligence of its employees under §9-601 (2) (1) of the Philadelphia Code, as amended, 1956 Ordinances p. 769. We will consider appellant's claims separately.

I

Appellant argues that the appellee has the right to prevent anyone, including the owner, from leaving the parking lot without the presentation of the claim check. This, according to appellant, is indicative of appellant's "relinquishment, for a time, of his exclusive possession, control, and dominion over the property" to appellee. 8 Am. Jur. 2d, *Bailments,* §20 (1963). Such a relinquishment of dominion, if it occurred, would create a contract of bailment. *Taylor v. Philadelphia Parking Authority,* 398 Pa. 9, 156 A. 2d 525 (1959).

In *Taylor* our Supreme Court stated that "[i]n order to fix liability upon the proprietors of an automobile parking place, it is necessary to ascertain if there is such a delivery of or assumption of control of the automobile entrusted to him as to create a bailment. One who merely leases automobile parking privileges is not the bailee of the parked car and consequently is under no duty to guard against loss by theft. 4 Williston on Contracts (Rev. Ed.) 2960, §1065a." *Taylor,* supra, at 11.

It is difficult to determine whether a sufficient "delivery" has taken place to create a bailment. Mr. Justice McBRIDE, speaking for the Supreme Court in *Taylor,* indicated that "[t]he decided cases recognize

two principal classes of legal relationships in dealing with the present-day type of parking lot. The first is where an owner rents space in a parking lot, drives his automobile therein, locks it or not as he chooses, and for all practical purposes retains control thereof. The second is where the garage attendants collect fees, assume control of cars, park them and move them about within the garage as they find convenient, the keys are left in the cars and tickets are issued as means of identifying cars upon redelivery. The first class of cases has almost universally been held to be that of a mere lease of parking privileges because the owner has paid a fee only for the privilege of parking his automobile without any actual delivery to the parking lot operator and with no corresponding right to redelivery. [Citations omitted.]

"The second class of cases has been held to constitute a bailment and the lot owner held responsible for loss of the car or damage to it. [Citations omitted.]" *Taylor*, supra, at 11-12.

Appellee's parking lot is much closer to the first class of parking lot described by Mr. Justice McBride. It is true that claim tickets are issued by appellee and that appellee's attendants collect fees, but the crucial factor in determining whether the relationship should be characterized as a bailment is "whether the alleged bailor delivered the custody and control of the item to the bailee." *Taylor*, supra, at 12.

Delivery of custody and control of an automobile requires that appellant "[reserve] possession of the car at all times by retaining the keys thereto. . . ." *Taylor*, supra, at 12. Where appellant has kept the keys to his car, appellee acquires "no dominion over the vehicle nor any right to control removal of it; hence there [is] no bailment." *Taylor*, supra, at 12.

Appellant argues that there was a delivery of custody and control in the instant case, even though the keys were not given to appellee, because (1) the retention of the keys is not determinative of "custody and control", and (2) the claim check issued by appellee represents an attempt by appellee to control removal of the vehicle. As to appellant's first point, it is clear that a locked trunk may be delivered to a bailee without a delivery of the key to open the trunk. The analogy, however, is weak. The bailee of a locked trunk may still move it from place to place in order to properly execute his trust and protect the bailor's property. An automobile is difficult to move without the key, and the movement of a locked vehicle was certainly not contemplated by the parties in the instant case. See *Cavanagh v. Bone Stadium, Inc.*, 87 Pa. D. & C. 496, 499 (1953).

In response to appellant's assertion that the claim check is appellee's method of controlling removal, appellee argues that the claim check is only a means of securing payment. To ascertain the significance of the claim check, it is necessary to reconsider the elements of a bailment. A bailment has been defined as a *delivery* of goods *in trust* upon a contract, expressed or implied, that the trust will be faithfully executed, and that after the purpose of the bailment has been fulfilled, the goods shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it. *Wright v. Sterling Land Company, Inc.*, 157 Pa. Superior Ct. 625, 43 A. 2d 614 (1945) ; See 8 C.J.S. *Bailments*, §1 (1962).

If the claim check in the instant case is indicative of a delivery which would create a "trust" relationship, appellee would have the duties of a bailee. However, no attendant is present at the entrance to appellee's lot, and there is no means of recording which ticket belongs

to which car. The claim check, therefore, is, at best, an imperfect security device. Appellee's control of removal is primarily intended to secure payment for the parking privilege. Though the claim check could conceivably be used as a security device, that alone is not sufficient to establish the technical requirement of a delivery in trust.

As stated in *Cavanagh v. Bone Stadium, Inc.*, supra: "[w]hile a contract of bailment may be implied, such contract can arise only where the natural and just interpretation of the acts of the parties warrants such conclusion; and no bailment can be implied where it appears that it was the intention of the parties, as derived from their relationship to each other, and from the other circumstances of the case, that the property was to be held by the party in possession in some capacity other than as bailee: [8 C.J.S. Bailments, §14 (1962)]." 87 Pa. D. & C. at 500.

If appellee has a duty of reasonable care as to appellant's automobile, that duty cannot be predicated upon the existence of the unique relationship known as a bailment. However, that does not preclude appellant from showing that a duty of care has arisen upon some other basis.

## II

Appellant contends that if the relationship between the parties is not a bailment, appellee has a duty to use reasonable care from the terms of an implied contract. In order to determine the rights and obligations flowing from this contract, the precise nature of the relationship between the parties must be established. Though it is often assumed that parking privileges can only be characterized as either a bailment or lease (*Cf. Taylor v. Philadelphia Parking Authority*, supra), the use of

a public parking lot does not create a landlord and tenant relation.

"[A] purely personal privilege to live on the land or to do certain acts thereon, but not to exercise exclusive possession and enjoyment for a term specified" is not a lease. Such a privilege is a license.[1] 21 P.L.E. *Landlord and Tenant*, §21 (1959) ; See *Muzzio v. Steele*, 279 Pa. 226, 123 A. 776 (1924) ; *Strickland v. Pennsylvania R. R.*, 154 Pa. 348 (1893) ; *Dougherty's Estate*, 58 Pa. D. & C. 202, 206 (1947). When appellee's patrons park their cars, they do not obtain a right to "exercise exclusive possession and enjoyment for a term specified." They merely have a right to use a portion of the lot for the strictly limited purpose of parking their automobiles for a period of time entirely within their own control. *Cf. Hennebont Company v. Kroger Company*, 221 Pa. Superior Ct. 65, 289 A. 2d 229 (1972).

A driver, by approaching the entrance to appellee's lot and its ticket vending machine, makes an offer to contract for permission to park in the lot at the posted rate per unit of time. The vending machine's issuance of a ticket is an acceptance of the driver's offer, and a contract is therefore created.

A license based on a valuable consideration is a contract, and the rights and obligations of the parties under such a license agreement depend on the provisions thereof. 53 C.J.S. *Licenses*, §84 (1948). In the instant case there is no written license agreement, and the agreement of the parties must be implied.

A duty to protect appellant's property may have been undertaken by appellee as part of the contractual agreement between the parties. As stated in the Com-

---

[1] A license is "an authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land." *Baldwin v. Taylor*, 166 Pa.. 507, 31 A. 250 (1895).

ment to the Restatement, Second, Torts, §302B : "There are . . . situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; . . .

"Normally such a duty arises out of a contract between the parties, in which such protection is an express or an implied term of the agreement." Restatement, Second, Torts, §302 B, comment e at 90 (1965).[2]

---

[2] In the recent case of *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, the Court of Appeals for the District of Columbia held that a landlord had a duty to protect tenants from the foreseeable criminal acts committed by third parties: "[t]he landlord is no insurer of his tenants' safety, but he certainly is no bystander. And where, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises exclusively within his control, has every reason to expect like crimes to happen again, and has the exclusive power to take preventative action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to his tenants." *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F. 2d 477, 481 (1970).

In *Kline* the Court of Appeals based its decision on two grounds : (1) the nature of the landlord-tenant relation, which limits the tenant's ability to provide for his own protection because of his submission to the control of the landlord, and (2) an implied contractual obligation upon the landlord "to provide those protective measures which are within his reasonable capacity." *Kline*, supra, at 485.

We do not reach the question whether the licensee-licensor relation in the circumstances of the instant case creates a duty upon the licensor to protect the property of the licensee. It should be noted, however, that the Court of Appeals stated that modern day "leases of urban dwelling units should be interpreted and construed like any other contract." *Kline*, supra, at 482, quoting *Javins v. First National Realty Corporation*, 428 F. 2d 1071, 1075 (1970).

Where a contract is implied from the surrounding circumstances, the law will derive its terms from the circumstances shown. *Reitmyer v. Coxe Bros. & Co., Inc.,* 264 Pa. 372, 375, 107 A. 739 (1919). In the instant case circumstances have been shown from which the trier of fact could infer that appellee had undertaken a duty of care as to appellant's property: Appellee's lot was surrounded by a fence; appellee issued appellant a claim check for his car with the words "This ticket must be presented to identify car"; and appellee had attendants at the exit to its lot twenty-four hours a day. These circumstances if proved, do not conclusively establish that appellee had assumed a duty to protect appellant's property. The trier of fact must determine whether, as a matter of law, such a duty was created after hearing all the evidence upon this issue.

It is apparent that the lower court did not give appellant a proper opportunity to prove an implied contractual duty of care.

Appellee argues, however, that no contractual duty of care can be found where there admittedly is no bailment. This would be true if the circumstances necessary to establish a bailment were the same as the circumstances necessary to establish an implied contractual duty of care, but the two concepts are not coextensive. The technical requirement of a delivery to create a bailment has nothing to do with the circumstances which would produce an implied duty of care.

For example, it is quite obvious that a parking lot owner who is not a bailee can obligate himself to protect the automobiles which are parked in his lot. He could advertise that his lot was protected against vandals and thieves, and in such circumstances he would clearly be liable for property loss or damage resulting from his failure to exercise reasonable care.

Appellant has alleged in the pleadings that appellee permitted an unauthorized person to remove appellant's car from the parking lot without the presentation of the claim check issued to appellant. If the appellee's attendants did not require that unauthorized person to produce a claim check when he removed the appellant's car, this would be a negligent act provided that appellee had a duty to request the presentation of a claim check before allowing a vehicle to pass through the exit of the lot.

Pennsylvania Rule of Civil Procedure 1035(b) provides in relevant part that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In the instant case there are controverted issues of fact that must be resolved prior to a determination of the rights of the parties. Appellant should have an opportunity to prove circumstances which would create an implied duty of care, and a violation of that duty by the appellee.[3]

The pleadings and other evidence in this case establish circumstances which, if proved at trial, are sufficient as a matter of law to create an implied duty of care.[4] It is clear, therefore, that there are genuine

---

[3] In *McFadden v. American Oil Company*, 215 Pa. Superior Ct. 44, 48-49, 257 A. 2d 283 (1969), our Court stated that "[i]n passing upon a motion for summary judgment, the trial court's function is not to decide issues of fact, but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Schacter v. Albert [212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968)]."

[4] The lower court must accept as true "all well-pleaded facts in the plaintiff's pleadings, *giving the plaintiff the benefit of all*

issues of material fact, and that the entrance of summary judgment in favor of the appellee was error.

For the above reasons the order of the lower court is vacated, and the case is remanded for proceedings consistent with this opinion.[5]

---

*reasonable inferences to be drawn therefrom." Toth v. Philadelphia,* 213 Pa. Superior Ct. 282, 285, 247 A. 2d 629 (1968). (Emphasis added.)

[5] We do not reach appellant's contention that appellee is liable for the negligence of its employees under §9-601(2)(1) of the Philadelphia Code, as amended, 1956 Ordinances p. 769.

It should be noted, however, that this ordinance was intended to prevent parking lot operators from contracting out of liability for the negligence of their employees or themselves. The language of the ordinance presupposes the existence of a duty of care, and this language cannot be read as creating a duty of care where such a duty did not exist prior thereto.