## Beltz v. Erie Insurance Exchange

*Thomas C. Anewalt,* for plaintiff.
*Michael P. Shay,* for defendant Erie Insurance Exchange.
*Kent H. Henman,* for defendant Carl H. Myers.
*Carolyn Frisoli Furst,* for defendant Calvin Danner.

BACKENSTOE, *P.J.* March 28, 1991—The matter before this court for disposition is the interpretation of an insurance policy between plaintiff Charles D. Beltz and defendant Erie Insurance Exchange. Specifically, this court must determine whether defendant Erie is obligated to provide coverage to plaintiff Beltz for the damage and loss of a John Deere 755 track loader.

Based on the evidence elicited at the hearing held on January 16, 1991, the record pleadings and the memoranda of law, we make the following findings of fact and conclusions of law.

### FINDINGS OF FACT

(1) Plaintiff, Charles D. Beltz, is an individual residing at R.D. no. 1, Box 143, Emmaus, Lehigh County, Pennsylvania.

(2) Erie Insurance Exchange is a defendant herein and is a licensed insurer in the Commonwealth of Pennsylvania with a branch office at 2200 West Broad Street, Bethlehem, Lehigh County, Pennsylvania.

(3) Defendant Carl H. Myers, d/b/a/ Carl H. Myers Agency is an individual in the business of selling insurance with an office at 4800 Hamilton Blvd., Allentown, Lehigh County, Pennsylvania.

(4) Defendant Calvin C. Danner is an adult individual residing at R.D. no. 1, Emmaus, Lehigh County, Pennsylvania.

(5) In May of 1985, plaintiff was engaged in the operation of a welding business as a self-employed sole proprietor doing business as Charles A. Beltz Welding.

(6) Sometime prior to May 29, 1985, plaintiff and defendant Erie entered into a comprehensive general liability policy.

(7) The policy was purchased by plaintiff through Carl H. Myers, d/b/a Carl H. Myers Agency, an independent Erie agent.

(8) The policy includes a section entitled "What We Do Not Cover-Exclusions." At clause 12 of this section the policy states in pertinent part:

"*[P]roperty damage* to property (including *elevators*) in the care, custody or control of *anyone we protect* or over which *anyone we protect* is exercising physical control. . . ."

(9) In May of 1985, defendant Danner was the operator of a landscaping excavating business.

(10) According to the testimony taken at the hearing upon the matter held on January 16, 1991, defendant Danner contacted plaintiff Beltz on or about May 28, 1985, and requested that Beltz perform certain welding repairs on the bucket of a John Deer 755 track loader.

(11) According to the testimony, plaintiff Beltz, who did not have a place of business, arrived at the construction site in South Allentown at approximately 7 a.m. in the morning on May 29, 1985, as per defendant Danner's request.

(12) The loader was located in the center of a large empty field.

(13) According to the testimony, Calvin Danner Jr. arrived at the construction site shortly after plaintiff's arrival. Danner Jr. showed plaintiff Beltz

the crack on the loader where the arm mounts into the machine. Danner Jr. had the keys to the loader and kept them in his pocket as he stood at plaintiff's side while plaintiff began his work.

(14) According to testimony, plaintiff Beltz began the repair of the loader by removing the old weld on the crack with his torch. The old weld had to be removed in order to make the needed repairs.

(15) According to the testimony, plaintiff Beltz had only been making the repairs for a couple of minutes when he noticed smoke coming out of the belly pan of the loader which is located on its undercarriage.

(16) Attempts were made at putting the fire out with an extinguisher but were unsuccessful. As a result the loader was destroyed.

(17) Plaintiff Beltz was sued by Danner as a result of the damage caused to the loader.

(18) Plaintiff Beltz requested coverage from Erie for Danner's loss, but Erie denied coverage on June 21, 1985, based on clause 12 of the policy.

## CONCLUSIONS OF LAW

(1) "The rules relating to the analysis of insurance policies in Pennsylvania are well established." *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068, 1075 (3rd Cir. 1980).

(2) Where an insurer seeks to disclaim coverage under an insurance policy by invoking an exclusionary provision, it bears the burden of proving that the exclusion is applicable to the particular case. *Myrtil v. Hartford Fire Insurance*, 510 F. Supp. 1198 (E.D. Pa. 1981) citing *Darburlos v. Commercial Insurance Co.* 521 F.2d 18, 24 (3d Cir. 1975); *Weissman v. Prashker*, 405 Pa. 226, 175 A.2d 63 (1961).

(3) The intent of the parties must be ascertained by examining the insurance policy as a whole. The

court should read the policy provisions so as to avoid ambiguities and "should not torture the language of the policy in order to create ambiguities where none otherwise exist." *Treasure Craft Jewelers v. Jefferson Insurance Co.,* 583 F.2d 650, 652 (3d Cir. 1978); *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty & Surety Co.,* 426 Pa. 453, 233 A.2d 548 (1967).

(4) "It has been held that there is no ambiguity in an exclusion with respect to property in the care, custody or control of the insured and that therefore such clause cannot be construed to mean otherwise than what it says and must be given the plain and ordinary meaning of the terms used." *Fitzgerald v. Rottner,* 56 D.&C. 2d 750, 756 (1972); *accord, Masters v. Celina Mutual Insurance Co.,* 209 Pa. Super. 111, 224 A.2d 774 (1966).

(5) "A bailment has been defined as a delivery of goods in trust upon a contract, expressed or implied, that the trust will be faithfully executed, and that after the purpose of the bailment has been fulfilled, the goods shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it." *Sparrow v. Airport Parking Co. of America,* 221 Pa. Super. 32, 37, 289 A.2d 87, 90 (1972); see *Riggs v. PennDOT,* 76 Pa. Commw. 227, 463 A.2d 1219 (1983).

(6) In determining whether the relationship should be characterized as a bailment, the crucial factor is "whether the alleged bailor delivered the custody and control of the item to the bailee." *Sparrow, supra* at 36, 289 A.2d at 90.

## DISCUSSION

This matter is before the court on the complaint of plaintiff, Beltz, who avers that defendant, Erie, must cover the damage to and loss of defendant

Danner's loader pursuant to plaintiff's comprehensive general liability policy with Erie.

Plaintiff, Beltz, contends that defendant Erie erred in not providing for coverage based on the care, custody or control exclusion in the policy. In fact, this court's decision hinges entirely upon the meaning of the "care, custody or control" clause within the policy.

Considering the facts and circumstances sub judice, it is clear that plaintiff Beltz did not have custody or control of the loader. Danner Jr. who retained the loader keys at all times pertinent hereto was present the entire time plaintiff Beltz was working on the loader. In other words, Danner Jr. never delivered the loader to plaintiff under contract or otherwise, never relinquished custody of the loader and never relinquished control over the loader. Plaintiff never had the opportunity to drive or operate the loader nor was he called upon to do so.

Clause 12 of the policy incorporates the phrase "care, custody or control." (emphasis added) Therefore, only one of the three criteria must be present before the clause operates to deny coverage. We are of the opinion that the loader was not damaged while in the *custody* or *control* of plaintiff. However, we do find that the loader was in the *care* of the plaintiff during those few minutes while he was making the requested repairs. Plaintiff Beltz was called upon to make certain repairs to the loader and during that time period when he was working, said loader was under his care.

Pursuant to *International Derrick & Equipment Co. v. Buxbaum,* 240 F.2d 536 (3d Cir. 1957), "[W]here the property damaged is merely (sic) incidental to the property upon which the work is being performed by the insured, the exclusion is not applicable. (citations omitted) However, where the

property damaged is under the supervision of the insured and is a necessary element of the work involved, the property is in the care, custody, or control of the insured." *Id.* at 538.

Herein, plaintiff, Beltz, while working on the loader clearly had supervision and care of the property. Further, the loader itself was obviously a necessary element of the work he was performing. Therefore, the loader was not merely incidental to the property upon which the work was being performed.

While we do not find a bailment sub judice since there was neither delivery of the loader nor relinquishment of custody or control of the loader, we do not conclude that for the time that plaintiff was working on the loader, the care of same was entrusted to plaintiff.

We find that "care, custody or control" clause is not ambiguous. See *Fitzgerald, supra.* Where language is deemed unambiguous, the plain and ordinary meaning of the terms must be used. "The parties have the right to make their own contract and it is not the function of this court to re-write it, or to give it a construction in conflict with the accepted and plain meaning of the language used." *International Derrick, supra.*

Accordingly, we conclude that the work performed by plaintiff Beltz was done while the loader was in the "care, custody or control" of the plaintiff. As a result, plaintiff's claim is not covered by the policy with Erie.

## ORDER

Now, March 28, 1991, upon consideration of the memoranda submitted by counsel, after a hearing upon the matter and for the reasons expressed in the

accompanying opinion, it is hereby ordered that defendant Erie Insurance Exchange is not obligated to provide coverage for the loss herein pursuant to clause 12 of the comprehensive general liability policy.