J-A14044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ILLONA, LLC D/B/A ATRIUM AT THE CURTIS CENTER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CURTIS CENTER, TIC I, LLC, CURTIS CENTER TIC II, LLC, HY'S CURTIS LLC, KPG-MCG CURTIS TENANT, LLC, KEYSTONE PROPERTY GROUP, L.P., MACK CALI REALTY CORPORATION, | |
| Appellees | No. 3236 EDA 2016 |

Appeal from the Order Entered September 27, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2016 No. 000949

BEFORE:  BENDER, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED JULY 25, 2017**

Illona, LLC d/b/a Atrium at the Curtis Center ("Illona") appeals from the September 27, 2016 order sustaining the preliminary objections ("POs") of Curtis Center TIC I, LLC, Curtis Center TIC II, LLC, HY'S Curtis LLC, KPG-MCG Curtis Tenant, LLC, Keystone Property Group, L.P., Mack Cali Realty Corporation (collectively, "Curtis Center"), and dismissing Illona's fourth amended complaint (the "Complaint").  We affirm.

Pursuant to a ten-year agreement (the "Lease") executed on April 1, 2008, with Curtis Center's predecessor in interest, Curtis Partners, LP, Illona leased space in the historic Curtis Center building on Washington Square in

Center City, Philadelphia. Pursuant to the Lease, Illona operated under an exclusive license (the "License") to use the Atrium and Dream Garden areas of the building for weddings and banquets ("License Area"). Additionally, Illona leased two ancillary suites, L45 and L89, exclusively as support for its use of the License Area.

After years of Illona's uninterrupted use of the License Area, Curtis Center became successors to Curtis Partners, LP, in June of 2014 and announced plans in January of 2015 to renovate the building, including the License Area. As of that announcement, Illona had ninety-two weddings booked for 2015. Curtis Center informed Illona that its plans would affect Illona's use of the License Area due to the erection of scaffolding, major construction, and the removal of key architectural features in the License Area. Curtis Center assured Ilona that it intended to compensate Illona for interference with Illona's exclusive use of the License Area.

Although Illona agreed not to book any weddings or events during the proposed construction period, December 5, 2015, through March 5, 2016, Curtis Center did not follow through on its assurances to Illona. Moreover, in June of 2015—part of the most popular wedding season—Curtis Center began removing key architectural features from the License Area. Due to construction delays, Curtis Center advised Illona that the renovation would not begin until February of 2016 and would continue through early 2017, during which period Illona had booked approximately 120 weddings.

Concerned that it would not be able to fulfill its upcoming contracts, Illona filed suit on February 5, 2016. Following a volley of complaints and POs, the Complaint set forth six counts. Curtis Center again filed POs, which the trial court sustained on September 27, 2016. This appeal followed. Illona and the trial court complied with Pa.R.A.P. 1925.

On appeal, Illona presents the following questions for our consideration:

1. Whether the Trial Court failed to properly recognize the distinct property interest and rights of the irrevocable license Illona received for the Atrium area that it used for its actual event space – as opposed to the leasehold for the corollary preparation and storage suites – when:

   A. The fundamental purpose of the License and Lease Agreement was to secure the License/Event Area to hold weddings and other events;

   B. Illona invested significant sums in reliance upon the grant of the [L]icense for the event space;

   C. The plain language of the License and Lease Agreement does not provide that significant construction and renovation to the Atrium and Dream Garden area are permissible irrespective of their impact on Illona's license rights and contrary to its exclusive right of enjoyment of that irrevocable license;

   D. Illona had enjoyed an eight year course of dealing with the previous landlord recognizing its exclusive right of enjoyment for its License/Event Area;

   E. The identification of the License/Event Area is more specific than the generic definition of

Common Area in the License and Lease Agreement; and,

F. The carve-out of rights in the License of limited rights of ingress and egress demonstrates that the License/Event Area was not a Common Area and the Trial Court's interpretation rendered this language surplusage?

2. Whether, alternatively, under the License and Lease Agreement Illona licensed the "License/Event Area," providing it with a right of quiet enjoyment that was infringed by the construction work[?]

3. Whether the Trial Court improperly ruled that Illona failed to plead a sustainable claim for tortious interference with contractual relations, as Illona maintained a separate claim against [Curtis Center] outside of their breach of contract claims?

4. Whether the Trial Court improperly dismissed Illona's claims for gross negligence against [Curtis Center], as the actions of [Curtis Center] and their construction workers caused damage to the Tiffany Mosiac [sic] that was a critical component of the Licensed Event Area?

5. Whether the Trial Court improperly dismissed Illona's claims for unjust enrichment at this early stage in [the] proceeding without any discovery on remaining factual issues?

Appellant's Brief at 3–5.

Our standard of review of an order of the trial court . . . [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably

- 4 -

deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 630 (Pa. Super. 2016) (quoting *Perelman v. Perelman*, 125 A.3d 1259, 1263 (Pa. Super. 2015), *appeal denied*, 141 A.3d 435 (Pa. 2016) (internal citations and quotation marks omitted)).

In its first issue, Illona complains that the trial court failed to recognize the difference between an irrevocable license and a leasehold. According to Illona, it "had an irrevocable License to use the License/Event Area based on its significant, detrimental reliance on the ability to use that Area during the term of the Agreement and as evidenced by its financial expenditures in reliance upon that License." Illona's Brief at 30–32. Curtis Center counters that "the Lease created the License and governs the parties' rights pursuant to the License, [therefore] Illona cannot establish that the License is irrevocable or that equitable relief is proper." Curtis Center's Brief at 25.

We reiterate:

The Pennsylvania Supreme Court adopted the equitable doctrine of irrevocable license in the mid-nineteenth century stating that "a license to do something on the licensor's land when followed by the expenditure of money on the faith of it, is irrevocable, and is to be treated as a binding contract." *Huff v. McCauley*, 53 Pa. 206, 208 (1866); *Kovach v. General Telephone Co.*, 340 Pa.Super. 144, 489 A.2d 883, 885 (1985). The Court subsequently explained that such a license, while not strictly an

- 5 -

easement, is in the nature of one. It is really a permission or license, express or implied, to use the property of another in a particular manner, or for a particular purpose. Where this permission has led the party to whom it has been given, to treat his own property in a way in which he would not otherwise have treated it...it cannot be recalled to his detriment. **Harkins v. Zamichieli**, 266 Pa.Super. 401, 405 A.2d 495, 498 (1979) (quoting **Pierce v. Clelland**, 133 Pa. 189, 19 A. 352 (1890)). Thus, the irrevocable license gives "absolute rights, and protects the licensee in the enjoyment of those rights." **Cole v. Ellwood**, 216 Pa. 283, 289, 65 A. 678, 680 (1907). Moreover, "successors-in-title take subject to an irrevocable license if they had notice of the license before the purchase." **Kovach**, *supra* (quoting **Harkins**, *supra* at 498).

**Morning Call, Inc. v. Bell Atl.-Pennsylvania, Inc.**, 761 A.2d 139, 144 (Pa. Super. 2000). In contrast, a leasehold is "[a] tenant's possessory estate in land or premises" obtained through a lease in exchange for rent or other consideration. Black's Law Dictionary 972, 973 (9th ed. 2009). "As such, a lease must be construed in accordance with the terms of the lease agreement as manifestly expressed[;] and the accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." **T.W. Phillips Gas & Oil Co. v. Jedlicka**, 42 A.3d 261, 267 (Pa. 2012) (quoting **J.K. Willison v. Consol. Coal Co.**, 637 A.2d 979, 982 (Pa. 1994)) (internal quotation marks omitted).

Upon review, we find that the trial court clearly recognized the distinction between Illona's leasehold and the License:

The terms of the subject lease are clear and can only be logically interpreted one way. The leased space encompasses

two suites within the Curtis Center building, and the Atrium is part of a "license area" granted to [Illona].

Section 2.1 of the [Lease] is entitled "Grant of Premises," and is divided into two subparts. Ex. B, Art. 2.1. The first subpart addresses the area leased to [Illona] and the second addresses the area licensed to [Illona]. Id.

The first subpart states, "Landlord hereby leases the *Premises* to Tenant." Id. (emphasis added). The Premises, as defined in Article 1, encompasses suites L45 and L89 of the building and not the Atrium. Id. art. 1. The second subpart states, "Provided no event of default has occurred . . . Tenant shall have the exclusive *license* to use the Atrium . . ." Id. art. 2.1 (emphasis added).

Trial Court Opinion, 9/27/16, at 3.

Moreover, we conclude that Illona's specific arguments within its first issue lack merit. The trial court recognized Illona's two separate interests under the Lease: use of the License Area to the exclusion of other event vendors and a leasehold of two suites in support of Illona's events. Illona's investment of significant sums in support of the License (Illona's Brief at 34–37) does not trump the express terms of the Lease which include the License Area as a common area.[1] *Accord Margolin v. Pennsylvania R.R. Co.*,

_____

[1] "Common area" is defined as:

All areas in the Property except those areas occupied by Landlord or leased to tenants or held for lease to tenants, including without limitation, parking areas, streets, driveways, aisles, sidewalks, curbs, delivery passages, loading areas (such as corridors, bathrooms and similar areas) on multi-tenant floors, other Building common areas and all other areas situated on or in the Property which are designated by Landlord from

*(Footnote Continued Next Page)*

- 7 -

168 A.2d 320 (Pa. 1961) (holding that an irrevocable license does not exist where a written agreement creates the license and governs the parties' rights and obligations in relation to the license). Section 6.3 of the Lease provides that alteration of the common area, and therefore the License Area, is permissible, notwithstanding Illona's exclusive right to use the License Area for banquet events.[2] As for Illona's uninterrupted, eight-year course of dealing with the previous landlord, that fact is irrelevant. Even though the

_____
*(Footnote Continued)*

> time to time, for use by, or for benefit of, all tenants or occupants of the Property in common.

Complaint, 7/14/16, at ¶ 22, Exhibit A at Article 1. The License Area was not occupied by the Landlord or leased to tenants or held for lease to tenants, and it was designated for the benefit of all tenants or occupants; therefore, as the trial court found, the License Area falls within the definition of common area. Trial Court Opinion, 9/27/16, at 3–4.

[2] Section 6.3 provides as follows:

> Landlord shall have the right to decorate and to make repairs, alterations, additions, changes or improvements, whether structural or otherwise, in, about or on the Property or any part thereof, and to change, alter, relocate, remove or replace service areas and/or Common Areas, to place, inspect, repair and replace in the premises (below floors, above ceilings or next to columns) utility lines, pipes and the like to serve other areas of the Property outside the Premises and to otherwise alter or modify the Property, and for such purposes to enter upon the Premises and, during the continuance of any such work, to take such measures for safety or for the expediting of such work as may be required, in Landlord's judgment, all without affecting any of Tenant's obligations hereunder.

Complaint, 7/14/16, at Exhibit A § 6.3.

identity of Illona's landlord changed, the terms of the Lease did not. The License remained subject to the Lease.

Additionally, we agree with Curtis Center that Illona's arguments regarding the definitions of the License Area and common areas in the Lease "are strained at best." Curtis Center's Brief at 18. As Curtis Center illustrates, the Lease expressly defines both areas, the definitions are not in conflict, and Illona's supporting case law is inapposite. *Id.* at 18–21. We further agree with Curtis Center that the "carve-out" language in the Lease is not surplusage:

> The "carve-out" language provides:
>
>> The forgoing license shall not affect the right of Landlord, Landlord's tenants and invitees to use the Licensed Area for non banquet events at times when the License Area is not being used by Tenant pursuant to the terms herein, **and** the right of all tenants to use the License Area in the Atrium for ingress and egress to and from the Building.
>
> (emphasis added . . .). This language is not surplusage because it is necessary to define the scope of Illona's License, which— contrary to Illona's characterizations—is not without limits.
>
> The first part of the "carve-out" language makes it clear that Illona's exclusive license is limited to banquet events only, but that other tenants may use the space for non-banquet events. The obvious purpose of this language is to ensure that no other company that produces and orchestrates weddings is permitted to use the License Area for such events. The second part of the "carve-out" language is included to ensure that Illona does not prohibit tenants from entering their leaseholds during Illona's wedding events, and is necessary because the License Area is regularly used by tenants for ingress and egress. As such, this language is necessary to define the scope of Illona's License.

*Id.* at 21–22 (internal citations to reproduced record omitted). Lastly, as Curtis Center points out:

> [t]he terms of the Lease belie Illona's assertions that the License is irrevocable. Most notably, the Lease has a definitive date of termination with no right of renewal. . . . In addition, the Lease provides that the Landlord may terminate the Lease and expel Illona in the event that Illona defaults under the Lease.
>
> * * *
>
> Significantly, **none** of the cases cited by Illona involved a written contract creating the license and governing the parties' rights and obligations in relation to that license.

*Id.* at 24–25 (internal citations to reproduced record omitted). Based on the foregoing, we conclude that Illona's first issue does not warrant relief.

In its second issue, Illona complains the trial court failed to recognize that the Lease provided Illona with a right of quiet enjoyment of the License Area. Illona's Brief at 44. Curtis Center retorts—and we agree—that the covenant of quiet enjoyment arises in the context of a lease, not a license. Curtis Center's Brief at 27–28 (citing *Lichtenfels v. Bridgeview Coal Co.*, 531 A.2d 22, 25 n.1 (Pa. Super. 1987), and *Sparrow v. Airport Parking Co. of Am.*, 289 A.2d 87, 91 (Pa. Super. 1972)). Therefore, under the Lease, Illona was entitled to quiet enjoyment of its leasehold, Suites L45 and L89, not to the License Area. The cases cited by Illona support this conclusion in that they all involve the covenant of quiet enjoyment in the context of a lease. Illona's Brief at 48–50; Curtis Center's Brief at 27 n.11.

Illona's third issue involves its count for tortious interference with contractual relations. Specifically, Illona argues that Curtis Center has taken "purposeful and intentional steps that harm Illona's third party contractual relationships, without any privilege or justification on their part." Illona's Brief at 54. According to Illona, the Lease "does not contain any provision or privilege which allows [Curtis Center] to remove the [License Area] from Illona's exclusive irrevocable license and as such, any attempt to remove the [License Area] is improper." *Id.* Illona further asserts that its claim for tortious interference is not based upon any of the terms of the Lease and, therefore, does not duplicate a breach of contract claim. *Id.* at 56.

In response, Curtis Center endorses the trial court's ruling that Illona's intentional-interference claim is barred by the gist-of-the-action and economic-loss doctrine.[3] Curtis Center's Brief at 34–40. The trial court opined:

> [Illona] alleges that its wedding contracts were interfered with by [Curtis Center's] construction project—the same project that was allegedly wrongful under the terms of the parties' lease contract. As such, this claim is based in contract law, not tort law, and is barred by the gist of the action and economic loss doctrines.
>
> The gist of the action doctrine bars a party from converting a breach of contract claim into a tort claim. See Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014). The critical determination

---

[3] Curtis Center submits that Illona has not addressed the economic-loss doctrine in its opening brief and, therefore, has waived consideration of that doctrine. Curtis Center's Brief at 36–38 and n. 15. We agree.

is whether the duty arose directly from terms of the contract or from a broader social duty owed to all individuals. Id. at 68.

Here, the basis of [Illona's] lawsuit is that [Curtis Center's] conduct has deprived [Illona] of the contract's benefits, and as such, lies in assumpsit.

Trial Court Opinion, 9/27/16, at 5–6.

Upon review, we agree with the trial court's analysis. The elements of tortious interference are: "(1) the existence of a contractual relationship between the plaintiff and a third party; (2) purposeful action on the part of the defendant intended to harm the relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damages resulting from defendant's conduct." **Hillis Adjustment Agency, Inc. v. Graham Co.**, 911 A.2d 1008, 1012 (Pa. Super. 2006).

Here, Illona averred that Curtis Center breached the Lease and that by doing so, Curtis Center interfered with Illona's third-party wedding/banquet contracts. Complaint, 7/14/16, at ¶¶ 167–172. Even if Curtis Center did interfere with Illona's third-party contracts, Section 6.3 of the Lease authorized Curtis Center to make alterations to common areas, including the License Area. Moreover, Illona did not aver that Curtis Center engaged in "purposeful action **intended** to harm" Illona's contractual relationships. **Hillis Adjustment Agency**, 911 A.2d at 1012 (emphasis supplied). Rather, it averred that Curtis Center knew or should have known that its actions would interfere with Illona's wedding contracts. **Id.** at ¶ 169. **Compare Jeannette Paper Co. v. Longview Fibre Co.**, 548 A.2d 319 (Pa. Super.

1988) (affirming judgment in favor of Jeannette where record established "malicious, willful and egregious conduct by Longview that comprised both a breach of contract and an intentional interference"). Thus, Illona's third issue does not warrant relief.

Next, Illona argues that the trial court erred in dismissing its gross negligence count. According to Illona, "Section 7.5 of the [Lease] explicitly allows for a claim of gross negligence against the Landlord." Illona's Brief at 57. Illona based this count on damage by construction workers to a unique Tiffany mosaic in the Dream Garden area, which Illona claims was a critical feature of the License Area. *Id.* at 58.

Curtis Center argues that Illona's gross negligence claim is a contract claim brought under Section 7.5 of the Lease, not a tort claim. Curtis Center's Brief at 30–33. According to Curtis Center, Section 7.5 "is not [a] *carte blanche* for Illona to bring a claim for any conduct that it deems to be 'gross negligence.'" *Id.* at 31. Additionally, Curtis Center contends that it did not owe a duty to Illona with regard to the Tiffany mosaic for two reasons: (1) Illona did not own the mosaic and (2) the License Area included the Dream Garden adjacent to the mosaic, not the mosaic itself. Thus, Curtis Center concludes, "this claim fails." *Id.* at 33.

The trial court disposed of Illona's fourth issue as follows:

> [Illona's] next claim centers on the contention that [Curtis Center was] grossly negligent during the construction project, and that such negligence caused damage to the Tiffany Mosaic

that borders the [L]icense [A]rea where the wedding banquets are held. See Pl. Compl. ¶ 138.

To support its position, [Illona] mistakenly relies on section 7.5 of the [L]ease. [Illona] claims that article 7.5 allows it to hold [Curtis Center] liable for all damages resulting from [Curtis Center's] gross negligence; however, to support this reading, [Illona] omits a key portion of the [L]ease's language. See Pl. Compl. ¶ 137. Section 7.5, when read in its entirety, states that [Illona] may hold [Curtis Center] accountable if their gross negligence allows a third party to commit ". . . a burglary, theft, vandalism, malicious mischief or other illegal acts" on the premises and damage results to [Illona']s property. Def. Mot. Ex. B, art. 7.5. Thus, because the damage did not result from any illegal third party act, [Illona's] reliance on section 7.5 is misplaced and its gross negligence claim (Count II) is hereby dismissed.

Trial Court Opinion, 9/27/16, at 5.

Section 7.5 provides as follows:

Landlord shall not be liable to Tenant or to Tenant's customers, employees, agents, guests or invitees, or to any other person whomever, for injury to persons or damage to property on or about the Premises or the Common Areas, including but not limited to, consequential damage, (1) caused by any act or omission of Tenant, its employees, subtenants, licensees and concessionaires or of any other person entering the Property or the Premises by express or implied invitation of Tenant, or (2) arising out of the use of the Premises or the Property by Tenant, its employees, subtenants, licensees, concessionaires or invites, or (3) arising out of any breach of default by Tenant in the performance of its obligations hereunder, or (4) caused by the improvements located in the Premises becoming out of repair or by defect in or failure of equipment, pipes, or wiring, or by broken glass, or by the backing up of drains, or by gas, water, steam, electricity or oil leaking, escaping or flowing into the Premises or property, or (5) arising out of the failure or cessation of any service provided by Landlord (including security service and devices). Tenant hereby agrees to indemnify Landlord and hold Landlord harmless from any liability, loss, expense or claim (including, but not limited to reasonable attorneys' fees) (a) caused by any act or omission of

Tenant, its employees, subtenants, licensees and concessionaires or of any other person entering the Property or the Premises by express or implied invitation of Tenant, or (b) arising out of the use of the Premises or the Property by Tenant, its employees, subtenants, licensees, concessionaires or invitees, or (c) arising out of any breach of default by Tenant in the performance of its obligations hereunder. Nor shall Landlord be liable to Tenant for any loss or damage that may be occasioned by or through the acts or omissions of other tenants of the Property or of any other persons whomsoever, excepting only duly authorize employees or agents of Landlord acting within the scope of their authority. Further, **Tenant specifically agrees to be responsible for and indemnify and hold Landlord harmless from any and all damages or expenses of whatever kind arising out of or caused by a burglary, theft, vandalism, malicious mischief or other illegal acts performed in, at or from the Premises, except for damages or expenses resulting from Landlord's, or Landlord's agents' employees', officers', or directors' gross negligence or willful misconduct.**

Complaint, 7/14/16, at Exhibit A § 7.5 (emphasis supplied).

The plain language of Section 7.5 is clear with regard to Illona's indemnification of Curtis Center and Curtis Center's liability for its own gross negligence. In light of that language, we agree that Section 7.5 does not apply under the facts of this case. Illona agreed to hold Curtis Center harmless for damages arising out of an illegal act, except damages resulting from Curtis Center's gross negligence or willful misconduct in relation to the illegal act. Here, the contractors did not commit an illegal act in allegedly damaging the Tiffany mosaic. Illona's attempt to broaden the scope of Section 7.5 to include any damages arising out of any gross negligence or willful misconduct by Curtis Center is unavailing. Therefore, we agree with the trial court's analysis of this issue and adopt it as our own.

Finally, in its fifth issue, Illona complains that the trial court erred in prematurely dismissing its count for unjust enrichment. Initially, Illona recognizes that "unjust enrichment is not generally found where a written or express contract exists." Illona's Brief at 60. However, Illona continues, the only defendant that is a party to the Lease is KPG-MCG; therefore, Illona denies that the Lease "is a binding contractual agreement between [the other defendants] and Illona." **Id.** Arguing the lack of an agreement with the other defendants, Illona bases its unjust enrichment claim on their retention and appreciation of rents paid by Illona without payment of value in return. **Id.** at 61.

In disposing of this issue, the trial court acknowledged the existence of "a dispute over which defendant is the landlord under the lease. See Def. Motion., *4 fn. 2." Trial Court Opinion, 9/27/16, at n.1. Nevertheless, the trial court chose not to resolve the dispute because it found "that even the landlord defendant is entitled to dismissal of the complaint." **Id.** The trial court further concluded:

> Because [Curtis Center's] actions were specifically permitted under the [L]ease, this court declines to grant [Illona] . . . damages under a theory of unjust enrichment (Count VI). See Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. 1999) ("We may not make a finding of unjust enrichment . . . where a written or express contract between parties exists.").

**Id.** at 4–5.

Upon review of the Complaint, we observe that "Count VI Unjust Enrichment, In the Alternative" contains a smattering of myriad legal concepts: equitable estoppel, inducement, misrepresentation, reasonable reliance, and interference. Complaint, 7/14/16, at ¶ 196–200. However, what Count VI does not include is fatal to Illona's position. Curtis Center raises the critical point:

> Illona ignores the fact that the Trial Court's dismissal of Count [VI] is based upon the Trial Court's fair reading of the [Complaint], and all well-pleaded material facts set forth therein. If Illona truly believed that the Appellees, other than KPG-MCG, were not bound by the Lease, then they had ample opportunity to include those allegations in the [Complaint].

Curtis Center's Brief at 40–41 (citation omitted). Indeed, Illona fails to aver which defendants were not party to the Lease and, as such, how they were unjustly enriched. In light of the deficiency in Illona's pleadings, we conclude that the trial court's substantive ruling is correct. *See Ruby v. Abington Mem'l Hosp.*, 50 A.3d 128, 136 (Pa. Super. 2012) (citing *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006) ("Appellant's unjust enrichment action cannot proceed in the face of fully-executed, express contracts.") and *Mitchell*, 729 A.2d 1200). Thus, Illona's final issue does not warrant relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/2017